**Edward CLAY, Petitioner-Appellee,**

v.

**Louie L. WAINWRIGHT, Director, Division of Corrections, State of Florida, Respondent-Appellant.**

**No. 71-3094.**

United States Court of Appeals, Fifth Circuit.

Dec. 18, 1972.

P. A. Pacyna, Asst. Atty. Gen., Tampa, Fla., for respondent-appellant.

John A. Williamson, Tampa, Fla., for petitioner-appellee.

Before JOHN R. BROWN, Chief Judge, and TUTTLE and INGRAHAM, Circuit Judges.

TUTTLE, Circuit Judge:

This appeal involves the question whether habeas corpus relief was properly granted to an indigent state prisoner whose probation had been revoked solely on the basis of misdemeanor convictions obtained without benefit of counsel. Having exhausted his state remedies, the appellee in this case brought a petition for writ of habeas corpus in the District Court for the Middle District of Florida, alleging, inter alia, that since he had not been af-forded counsel at his trials for five separate misdemeanor charges, his convictions therefor were invalid and could not be used as a basis for the state court's order revoking his probation. The district court granted the writ for habeas corpus relief and held that since the petitioner's period of probation had expired the state court had lost jurisdiction to reconsider the charges against him concerning violations of his probation. We affirm in part and reverse in part.

The facts of this case, as they appear from the Report and Recommendation of the magistrate who conducted an evidentiary hearing on the application for habeas corpus relief,[1] are as follows: Petitioner Clay (appellee herein) was informed against in the Court of Record in and for Manatee County, Florida, on June 6, 1968 for second degree murder in the stabbing death of Edward Lee Freeman on June 1, 1968. Clay entered a plea of nolo contendere to the lesser-included charge of manslaughter and on December 11, 1968, the court withholding adjudication, placed Clay on probation for a period of eighteen months.[2]

---

1. In accordance with the district court's standard procedure with regard to habeas corpus petitions under 28 U.S.C.A. § 2254, this case was assigned to a United States Magistrate who, upon hearing, submitted to the district court his Report and Recommendation containing findings of fact and conclusions of law. Both parties agree that the magistrate's findings accurately reflect the facts of the case.

2. F.S.A. Section 948.06 provides:

(1) Whenever within the period of probation there is reasonable ground to believe that a probationer has violated his probation in a material respect, any parole or probation supervisor may arrest such probationer without warrant wherever found, and forthwith shall return him to the court granting such probation. Any committing magistrate may issue a warrant upon the facts being made known to him by affidavit of one having knowledge of such facts, for·the arrest of the probationer, returnable forthwith before the court granting such probation. Any parole or probation supervisor, all officers authorized to serve criminal process, and all peace officers of this state shall be authorized to serve and execute said warrant. The court, upon the probationer being brought before it, shall advise him of such charge of violation and if such charge is admitted to be true may forthwith revoke, modify or continue probation and, if revoked, shall adjudge the probationer guilty of the offense charged and proven or admitted, unless he shall have previously been adjudged guilty, and impose any sentence which it might have originally imposed before placing the probationer on probation. If such violation of probation is not admitted by the probationer, the court may commit him or release him with or without bail to await further hearing, or it may dismiss the charge of probation violation. If such charge is not at said time admitted by the probationer and if it is not dismissed, the court, as soon as may be practicable, shall give the probationer an opportunity to be fully heard on his behalf in person or by counsel. After such hearing, the court may revoke, modify, or continue the probation. If such probation is revoked,

As a condition of probation he was required, among other things not here relevant, to "live and remain at liberty without violating any law." This requirement appears as condition (h) on the standard form probation order.

On February 17, 1969, Clay was convicted by a justice of the peace for exhibiting a dangerous weapon, an offense which at that time carried a possible maximum penalty of three months in jail plus a fine. Later, on May 14, 1969 he was tried and convicted on four other criminal charges, all of which arose out of a single arrest. Two of them, obstructing justice and disorderly conduct, were heard before the court of record of Manatee County; the others, charges of open profanity and public drunk, were tried before a local justice of the peace. Cumulatively these four charges carried a possible maximum penalty well in excess of ninety days.[3]

With respect to all of these misdemeanor trials the magistrate found that "petitioner was not afforded counsel, pe-

titioner did not waive counsel, petitioner was indigent."

Subsequently, on the basis of an affidavit submitted by Clay's probation officer setting forth these convictions of February and May, 1969, a warrant was sworn out in the court of record of Manatee County for Clay's arrest.[4] As a result Clay was arrested and brought before the court of record which, on June 11, 1969, revoked Clay's probation, adjudged him guilty of manslaughter, and sentenced him to twenty years at hard labor in the state prison.[5]

Based upon the report of the magistrate and upon its own independent examination of the record, the district court found, and appellant Wainwright concedes, that revocation of Clay's probation was based *solely* on the five misdemeanor *convictions* described above. The court concluded that inasmuch as these five convictions were procured in violation of Clay's right to counsel, they must be vacated, and that as a consequence the order of revocation could not

the court shall adjudge the probationer guilty of the offense charged and proven or admitted, unless he shall have previously been adjudged guilty, and impose any sentence which it might have originally imposed before placing the probationer on probation.

3. In Florida the crime of obstructing justice is punishable by imprisonment in the county jail for a period not to exceed one year or in state prison not to exceed two years. Disorderly conduct is a misdemeanor "punishable by law" (or apparently as much as one year's imprisonment). The offenses of open profanity and public drunk carry a possible maximum penalty, respectively, of three months and sixty days, with a $25 fine. On the charges of obstructing justice and disorderly conduct Clay was sentenced to concurrent ten day jail terms; on each of the other two charges he received a fine of $25 or ten days in the county jail, sentences to run consecutively.

4. The warrant, which is in language identical to that of the affidavit and the subsequent order of revocation, states that "the aforesaid [Clay] has not properly conducted himself but has violated the conditions of his probation in a material

respect by violation of condition (h) in that the subject failed to live and remain at liberty without violating any law in that on May 14, 1969 the subject was convicted in the Manatee County Court of Record of the offense of Resisting Arrest and Disorderly Conduct and sentenced to serve ten (10) days from date of arrest for Resisting Arrest and ten (10) days from date of arrest concurrent with Resisting Arrest on the Disorderly Conduct charge. On May 14, 1969 the subject was convicted in JP Court #1 of the offense of Drunk and Open Profanity. He was sentenced to pay a fine of $25 or 10 days on each count. Subject further failed to remain at liberty without violating any law in that on February 17, 1969 in JP Court #1, Sarasota, Florida subject was convicted of the offense of Improper Exhibition of a Dangerous Weapon and sentenced to serve ninety (90) days in the County Jail with eighty (80) days suspended.

5. Thus, a judgment of 18 months probation was ballooned by these minor convictions (claimed by the State to be too "petty" for Clay to be constitutionally entitled to counsel), principally arising out of one drunken occurrence, to a sentence of twenty years at hard labor.

stand. Accordingly, Clay's application for writ of habeas corpus was granted. The state, in behalf of the director of the Florida Division of Corrections, appeals from that judgment.

■ We start with the proposition that under Florida law there is no question that an order revoking probation which is based solely on invalid convictions constitutes no legal basis for the continued imprisonment of a habeas corpus petitioner. The Supreme Court of Florida has so held. State ex rel. Roberts v. Cochran, 140 So.2d 597 (Fla. 1962). Thus, we are faced only with the question whether, as a constitutional matter, Clay's misdemeanor convictions were invalid by virtue of having been obtained in violation of his right to counsel.

This issue, in the context of so-called "petty" offenses, has had a long and checkered career in the courts. Now, however, the matter has been put to rest, at least for the future, by the Supreme Court's recent decision in Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972) in which Mr. Justice Douglas, speaking for the Court, said: ". . . absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." (P. 37, 92 S.Ct. p. 2012). The Court gave no indication as to whether the decision was to be applied retroactively, but we find it unnecessary to decide that question for we are of the view that the law of this circuit at the time of Clay's misdemeanor convictions in 1969 was such that those convictions necessarily must be vacated.

■ We note that the issue was squarely met in Harvey v. Mississippi, 340 F.2d 263, 271 (CCA 5, 1965), a case in which this court held that a person charged with a misdemeanor punishable by a fine of up to $500 and up to ninety days in jail was constitutionally entitled to be represented by counsel.[6] It is argued, nonetheless, that by 1969 the Harvey decision was dead letter in this circuit, largely because of the intervening decision by the Supreme Court in Cheff v. Schnackenberg, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1962), which held that persons charged with a petty offense[7] are not constitutionally entitled to trial by jury. See also Duncan v. Louisiana, 391 U.S. 194, 88 S.Ct. 1444, 20 L.Ed.2d 552 (1968). However, that argument was rejected by this court in James v. Headley, 410 F.2d 325 (CCA 5, 1969)[8] which held that notwithstanding the Supreme Court's decisions with respect to *jury trials,* Harvey v. Mississippi, dealing with *right to counsel,* was still "very much alive." See also Bohr v. Purdy, 412 F.2d 321 (CCA 5, 1969). The Court held that the two appellants, James and Miller, who had been charged with several different offenses arising out of a single arrest, each of which carried a maximum sentence of sixty days, were, under the rule

6. It has been suggested that the Harvey case should be limited in its application "because of the particularly flagrant circumstances involved in the case." Brinson v. State of Florida, 273 F.Supp. 840 (S.D.Fla., 1967). While this sort of distinction is at best irrelevant in the context of right to counsel, we would nonetheless point out that petitioner Clay, like Harvey, was illiterate and was thus in no better position to defend himself than Harvey was. Moreover, we have no doubt that the Harvey decision was not bottomed on the discredited rationale that one's right to counsel should be determined on a case by case basis (and then only after trial and conviction) depending on whether or not the circumstances surrounding conviction were "flagrant." See Gideon v. Wainwright, 372 U.S. 225 (1963).

7. A petty offense is defined by 18 U.S.C.A. § 1 as "any misdemeanor, the penalty for which does not exceed imprisonment for a period of six months or a fine of not more than $500, or both . . ."

8. Decided April 9, 1969 (and thus well before Clay's trials on May 14, 1969).

announced in Harvey, entitled to the services of counsel.[9]

■ We are of the view that the convictions here at issue likewise fall within the ambit of Harvey v. Mississippi, and must be vacated. That being so, the district court properly vacated the state court's order revoking Clay's probation and adjudging him guilty of manslaughter.

Even so, appellant belatedly urges that the district court erred in holding that the petitioner "shall not be held to answer the charges against him in the Court of Record in Manatee County, Florida, relative to revocation of his parole, the period of probation having expired and the court therein having lost jurisdiction." Appellant contends that instead the proper disposition of this case is to remand the petitioner, who is currently at liberty, to the custody of the state for reconsideration of the question whether he violated his probation.

In its determination that Clay should not be held to answer the charges against him in the Court of Record in Manatee County, Florida, relative to revocation of his parole, the trial court adopted the recommendation of the magistrate, who, in his report, stated as follows:

"In view of the expiration of the original eighteen months probation, and the Court of Record in and for Manatee County having lost jurisdiction over petitioner as to probation (see F.S. 948.04, Streeter v. State of Florida, 211 So.2d 32 (1968), Brooker v. State, 207 So.2d 478, Fla. (1968), and the foregoing findings, I recommend that an order be entered providing that: . . . . (4) That the respondent discharge the petitioner from custody and that the petitioner not be held to answer the charges against him in the Court of Record in Manatee County, Florida, the period of probation having expired and the court therein having lost jurisdiction."

Although the State of Florida filed a motion for rehearing to the order of the trial court in the habeas corpus action, it made no comment whatever with respect to this issue, that is to say, the State complained only of the adjudication of the invalidity of the probation revocation proceedings, and took no issue with the determination that under the Florida statute mentioned in the magistrate's report, the Court of Record in Manatee County had no further jurisdiction over the matter. Moreover, when the State subsequently filed a motion for a stay of the trial court's order pending appeal to this court, in order that the petitioner might not be released from custody, it still did not criticize this part of the trial court's determination. Thus, the prisoner was released from custody without the State's ever having called to the attention of the trial court what it now contends to be the Florida law: that since affirmative action had been taken by the State to revoke Clay's parole within the eighteen-

---

9. A second rationale for disregarding Harvey, likewise rejected in James v. Headley, is that under the Criminal Justice Act of 1964, 18 U.S.C.A. § 3006A, no provision is made for appointment and compensation of counsel in cases involving petty offenses as defined by 18 U.S.C.A. § 1, supra, n. 7. It is argued that since the federal standard is set at six months a like rule for appointment of counsel should govern state proceedings. Brinson v. State of Florida, supra, n. 6. We think, however, that the Criminal Justice Act merely limited the cases for which compensation was to be provided and was never intended as a limitation on a petty offender's right to counsel. This interpretation is borne out by the legislative history in which the following explanation is given:

"The constitutional mandate of the Sixth Amendment is without doubt applicable to petty offenses, but it is the view of the conferees that adequate representation may be afforded defendants in such cases without the need for providing for compensation for counsel." Conf.Rep. 1709, U.S.Code Cong. and Admin.News (88th Cong. 2d Sess., 1964), v. II, p. 3000.

months period, the Florida statute did not apply. Even beyond that, when the State appealed to this court from the judgment of the habeas corpus court it still did not complain of this disposition of the case by the trial court. No mention was made in the State's brief as appellant of this contention. Of course, therefore, nothing was said on the subject in Clay's brief as appellee in this court. Finally, within a few days of the oral argument, nearly a year after the case was here on appeal, the State filed what it called a "Reply Brief," which was, in fact, not a reply brief but an effort to file a supplementary brief in chief, for the first time attacking the determination originally made by the magistrate and adopted by the court to the effect that the Florida statute meant literally what it said when it provided:

"Upon the termination of the period of probation, the probationer shall be released from probation and shall not be liable to sentence for the crime for which probation was allowed." F.S.A. § 948.04.

In its so-called reply brief, the State cites the Florida case of Carroll v. Cochran, 140 So.2d 300 (1962) for the proposition that the State has not lost jurisdiction over a probationer under such circumstances as exist here, if "in the meantime the processes of the court have been set in motion for revocation or modification of the probation."

While this contention comes very late in the cause of the litigation, Clay's counsel did have an opportunity to counter the argument, both at oral argument and, if requested, by further brief. His failure to do so, we are sure stems from his recognition of the correctness of the state's legal position rather than from a lack of diligence on his part. Although not condoning the failure of the state to raise this issue with the district court, at a time when that court might have

considered other issues raised by Clay, we nevertheless feel that we must notice what is the clear decisional law of Florida.

Without doubt the *court order* revoking Clay's probation, being invalid, cannot of itself justify the continued jurisdiction of the state court over Clay. However, under Florida law it would appear that the *warrant* sworn out for Clay's arrest, even though it was based solely on the invalid convictions, is nonetheless sufficient for the state court to retain jurisdiction over Clay as a probationer, notwithstanding the fact that technically Clay's probationary period has ended. On facts similar to those before us the Supreme Court of Florida, in State ex rel. Roberts v. Cochran, supra, held:

"We must, therefore, find that the . . . order based solely on the alleged [invalid] conviction constitutes no valid basis for the continued imprisonment of Roberts. However, this does not mean that the prisoner is entitled to immediate release. *He is properly in custody under the warrant charging a violation of probation.*" at 600. (emphasis added)

As to the validity of the warrant the court went on to say:

"We do not overlook the fact that this warrant charges a violation of 'Condition H' as a result of the Polk County proceedings. However, in any subsequent hearing before him the trial judge . . . has full power to disregard the judgment of conviction as such and make an independent determination as to whether the law was violated in order to lead to a revocation of probation." [10] Id.

In view of this decision we think that the court of record in Manatee County has not lost jurisdiction over Clay. Pending further proceedings in the dis-

---

10. The "Condition H," referred to by the court is the same as that which Clay was alleged to have violated, i. e., to "live and remain at liberty without violating any law."

trict court [11] the court of record is doubtless entitled to hold a rehearing on the issue of revocation. However, even if it be determined at a subsequent hearing that Clay did in fact violate his probation, we recognize that the fact that his misdemeanor convictions were invalid may have some bearing on the sentence, which might ultimately be meted out.[12] As the Supreme Court pointed out in the recent case of United States v. Tucker, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1971), the real question here is not whether the results of Clay's misdemeanor trials might have been different if he had had counsel, but whether the sentence given him upon revocation of probation might have been different if the sentencing judge had known that all five of Clay's misdemeanor convictions had been unconstitutionally obtained. In Tucker, the Supreme Court found the answer to be "yes". Here, if the sentencing judge had been aware of the constitutional infirmity of these convictions the circumstances of Clay's behavior on probation might "have appeared in a dramatically different light at the sentencing proceeding." United States v. Tucker, supra, at 448, 92 S.Ct. at 592.[13]

For the foregoing reasons we conclude that although Clay's misdemeanor convictions in February and May, 1969 and the judgment and sentence following the revocation must be vacated, the court of record in and for Manatee County nonetheless retains jurisdiction over petitioner.

Affirmed in part, reversed in part, and remanded for proceedings not inconsistent with this opinion.

11. Upon remand the district court may, if it chooses, consider the other allegations, not heretofore considered, made by Clay in his original petition for writ of habeas corpus. We note, for instance, that Clay raises an issue as to the voluntariness of his plea of nolo contendere to the manslaughter charge. See Russell v. State, 233 So.2d 148 (Fla.D.C.A. 4, 1970).

12. Under this Florida statute the state trial court will still have to make an adjudication and determine sentence.

13. That the sentence might well have been different is suggested by the expression of doubt by the trial judge as to Clay's guilt on the original second degree murder charge. He said: "The Court has investigated this case, and I believe in the case of murder in the second degree there is a very good possibility of being acquitted, considering the circumstances."