**Ernest Jackson COTTLE, Petitioner-Appellee,**

v.

**Louie L. WAINWRIGHT, Director, Division of Corrections, Respondent-Appellant.**

**No. 72-1673.**

United States Court of Appeals, Fifth Circuit.

April 23, 1973.

Robert L. Shevin, Atty. Gen., Wallace E. Allbritton, Asst. Atty. Gen., Tallahassee, Fla., for respondent-appellant.

Morton A. Kesler, Jacksonville, Fla., court appointed, for petitioner-appellee.

Before TUTTLE, WISDOM and SIMPSON, Circuit Judges.

TUTTLE, Circuit Judge:

Ernest Jackson Cottle, appellee herein, was convicted of robbery in the Duval County Criminal Court of Record and on September 14, 1956, was sentenced to serve a term of twelve years in the state penitentiary. He was released on parole on November 28, 1961, and thereafter conducted himself in a manner which the Florida Parole Commission found unobjectionable until April 29, 1968 when he was convicted in the Recorder's Court of New Hanover, North Carolina for public drunkenness. The court imposed the maximum penalty of twenty days for a first such offense, but suspended sentence. On June 12, 1968 Cottle was again convicted in the Recorder's Court for the same offense and this time he received a twenty day jail sentence pursuant to a North Carolina statute which provides for as much as six months' imprisonment for a second such offense committed within a year after the first.[1] Insofar as appears from the record, Cottle was not represented by counsel,[2] nor was he advised of any right to appointed counsel, at either of these North Carolina trials.

On August 2, 1968 the Florida Parole Commission, in view of the North Carolina convictions, conducted a hearing to determine whether Cottle's parole should be revoked. With respect to such hearings the state of Florida has provided by statute that:

"As soon as practicable after the arrest of a person charged with violation of the terms and conditions of his parole, such parolee shall appear before the commission in person, and *if he desires he may be represented by counsel,* and a hearing shall be had at which the state and the parolee may introduce such evidence as they may deem necessary and pertinent to the charge of parole violation." F.S. § 947.23, F.S.A. (Emphasis supplied).

Although thereby permitted to be represented by counsel, Cottle, who was indigent, appeared before the Commission without the benefit of counsel and testified in his own behalf. He denied having committed the parole violations with which he had been charged.[3] The Commission, however, formally revoked his

---

1. The statute provides:
   "If any person shall be found drunk or intoxicated in any public place, he shall be guilty of a misdemeanor and upon conviction or plea of guilty shall be punished by a fine . . . or by imprisonment for not more than 20 days in the county jail. Upon conviction for any subsequent offense under this section within a 12-month period he shall be punished by a fine . . . or by imprisonment for not more than 20 days in the county jail or by commitment to the custody of the Commissioner of Correction for an indeterminate sentence of not less than 30 days and not more than six months."
   § 14-335, General Statutes of North Carolina.

2. The trial court found that Cottle "was not represented at the trials . . . , solely because of his indigency." Neither in the trial court nor here did the state of Florida contest this finding.

3. In the Notice of Hearing on Parole Violation Cottle was charged with having violated the conditions of his parole in the following respects:
   "Violated Condition 8 of your Certificate of Parole by failing to live and remain at liberty without violating the law; in that on April 29, 1968, in the Recorder's Court of New Hanover County, North Carolina, you received a 20 day suspended sentence for Public Drunk.
   "Also, on June 12, 1968, in the same court you received a 20 day sentence in the County Prison farm for Drunk, thereby violating Condition 4 which states in part, 'I will not use intoxicants of any kind to excess.' "

parole, retroactive to July 6, 1968, by order of revocation dated August 6, 1968.[4]

Having exhausted his state remedies, Cottle brought this petition for writ of habeas corpus in the United States District Court for the Middle District of Florida. He alleged, first, that the failure of the state to appoint counsel to represent him at his parole hearing constituted a denial of equal protection, and, second, that parole revocation could not properly be based on the two North Carolina convictions which, he asserted, were procured in violation of his constitutional right to counsel. The district court, 338 F.Supp. 819, upon resolution of the factual issues,[5] concluded that Cottle's claims were meritorious. The court released Cottle on his own recognizance and ordered that at any subsequent parole revocation hearing Cottle should be afforded the services of counsel and that at such hearing, if any, the judgments of conviction from the North Carolina trials could not be considered by the Parole Commission as evidence (although the underlying facts might be proved by independent evidence). The state of Florida, in behalf of the director of the Florida Division of Corrections, appeals from that judgment. We affirm in part and reverse in part.

We consider first whether the Equal Protection Clause of the Four-

teenth Amendment to the Constitution requires that the state of Florida appoint counsel for indigent parolees unable themselves to retain counsel to represent them at parole revocation hearings. This question, of course, arises specifically within the framework of Florida's legislative scheme pertaining to parole revocation, which, among other things, provides that a parolee, if he desires, "may be represented by counsel" at his parole revocation hearing. We are of the view that inasmuch as such assistance is, by statute, available to those who can afford it, it should likewise be available to those who cannot.

In this context we need not undertake to reflect upon the question whether the state of Florida would be obliged, as a matter of due process, to provide for representation by counsel at parole revocation hearings. The Supreme Court has recently had occasion to consider whether the requirements of due process apply to parole revocation proceedings and while it concluded that certain minimal procedures were constitutionally mandated, it did not "reach or decide the question whether the parolee is entitled to the assistance of retained counsel or to appointed counsel if he is indigent." Morrissey v. Brewer, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1971). Nor do we.[6]

---

4. The order states that Cottle had violated his parole in the manner described in the Notice of Hearing, supra, n. 3.

5. The court found that although Cottle had waived the right to an attorney at his revocation hearing, both orally and in writing, such waiver was meaningless inasmuch as Cottle could not in any event have hired an attorney to represent him. The court held that "petitioner waived nothing other than the right to retain private counsel and of the loss of this right he does not complain, since it was worthless to him." That finding is not here disputed. Moreover, the record is clear that Cottle was not told that he could have counsel appointed for him.

6. The precise question has apparently not been decided in this circuit. In Shaw v. Henderson, 430 F.2d 1116 (CA 5,

1970), we held that the Sixth Amendment right to counsel and the rationale behind Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967), did not apply to a probation revocation hearing where sentencing did not occur during such proceeding. This decision was followed in Woods v. Texas, 440 F.2d 1347 (CA 5, 1971), a case involving parole revocation. However, the *ratio decidendi* of both of these cases was that the revocation hearings involved were not "criminal proceedings" as the term is constitutionally understood and that, as a consequence, the *Sixth Amendment* right to counsel did not attach. But see United States v. Bright, 471 F.2d 723 (5th Cir. 1973). Of course, these decisions do not answer the question whether counsel would be required as a matter of due process under the Fifth Amendment. For an opinion

However, though we reserve decision as to whether the state might be required to provide for representation by counsel at parole revocation hearings, we think nonetheless that, once having provided for retained counsel, the state cannot constitutionally deny the same opportunity to indigents. This conclusion simply restates a well-established principle of constitutional jurisprudence. In Griffin v. Illinois, 351 U.S. 12, 20, 76 S. Ct. 585, 591, 100 L.Ed. 891 (1955), for instance, the Supreme Court held that a state with an appellate system which made available trial transcripts to those who could afford them was constitutionally required to provide "means of affording adequate and effective appellate review to indigent defendants." The Court noted, "It is true that a State is not required by the Federal Constitution to provide appellate courts or a right to appellate review at all. [citation omitted]. But that is not to say that a State that does grant appellate review can do so in a way that discriminates against some convicted defendants on account of their poverty." 351 U.S. at 18, 76 S.Ct. at 590. Although this decision arose in a fairly limited context, its fundament is not so limited and has been held to apply to representation by counsel. Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1962); Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892 (1962). As the Court said in Douglas, "[t]here is lacking that equality demanded by the Fourteenth Amendment where the rich man, who appeals as of

right, enjoys the benefit of counsel's examination into the record, research of the law, and marshalling of arguments on his behalf," while the indigent is left to shift for himself. 372 U.S. at 358, 83 S.Ct. at 817.

We note that the Court of Appeals for the Tenth Circuit in Earnest v. Willingham, 406 F.2d 681 (CA 10, 1969) has directly addressed the question which confronts us here and has concluded as we have. In that case the issue was whether the federal parole board, which as an administrative matter permitted the retention of counsel for parole revocation hearings, could refuse to appoint counsel for indigents. The court said, "To pose the question is to answer it for Griffin and its progeny have made it clear beyond doubt that where liberty is at stake a State may not grant to one even a non-constitutional statutory right such as here involved and deny it to another because of poverty." 406 F.2d at 683–684.

■ While absolute equality between rich and poor is not required by the Constitution, we think that indigent parolees at least are entitled to as adequate a parole revocation hearing as those who have means, and in this respect representation by counsel is likely to be of substantial importance to the poor as well as the rich.[7] The very fact that the Florida legislature has seen fit to permit representation by counsel, at least to non-indigents, we think attests to its efficacy. We agree with the court's con-

---

tracing the judicial decisions pro and con on the due process issue, see United States ex rel. Bey v. Connecticut State Board of Parole, 443 F.2d 1079 (CA 2, 1971).

7. It cannot be gainsaid that to the parolee faced with possible revocation a great deal is at stake. As the Court said in Morrissey v. Brewer, supra,
   ". . . the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others. . . . By whatever name the liberty is valuable and must be seen as within the protection of

the Fourteenth Amendment." 408 U.S. at 482, 92 S.Ct. at 2601.
No better example of the importance of the revocation hearing can be imagined than the facts of the case before us. After serving five years in confinement on a 12 year sentence Cottle was released in 1961 on parole. At the time he was arrested on a revocation warrant in July, 1968, for two "drunk" convictions he had less than *two months* to finish his entire sentence. By the order of revocation he was recommitted to the state penitentiary to serve out the *seven years* that remained after his 1961 release on parole.

clusion in Earnest v. Willingham, supra, that "a revocation hearing is no 'perfunctory formality.' Nor can it be said that the assistance of counsel at such a revocation hearing is an empty ritual. It may very well spell the difference between revocation and forgiveness." 406 F.2d at 684. Such valuable service ought not be denied a parolee simply because he is poor.[8]

We turn, then, to the second issue raised on this appeal, to wit, whether the Florida Parole Commission, at any subsequent hearing, may consider, as a basis for revocation, the two convictions against Cottle for public drunkenness. To an extent this issue turns on whether or not the recent Supreme Court decision in Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1971), pertaining to the right to counsel in misdemeanor cases, is to be applied retroactively.[9]

We conclude that *Argersinger* is fully retroactive, but that only the second of Cottle's two convictions falls within its scope and must be excluded from the Parole Commission's consideration.

The Court held in *Argersinger* that "absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." 407 U.S. at 37, 92 S.Ct. at 2012. Though the Court did not specify whether the decision was to be applied retroactively, the issue not being before it, there are several factors which argue in favor of such application.

The starting point is Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), which sets forth three criteria for guiding resolution of the question whether a newly-announced rule of criminal procedure is to be applied retroactively. These are: "(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." 388 U.S. at 297, 87 S.Ct. at 1970. However, as the Court recently noted in Adams v. Illinois, 405 U.S. 278, 280, 92 S.Ct. 916, 918, 31 L.Ed.2d 202 (1971),

"We have given complete retroactive effect to the new rule, regardless of good faith reliance by law enforcement authorities or the degree of impact on the administration of justice, where the 'major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials . . .' Williams v. United States, 401 U.S. 646, 653, 91 S.Ct. 1148, 1152, 28 L.Ed.2d 388 (1971)."

Given as an example was the right to counsel at trial established by Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

Gideon, of course, was held to be fully retroactive by the Court without opin-

---

8. The state argues that to require representation by appointed counsel would unduly slow the administrative processes of the parole system. The short answer to this contention is that if the state is willing to take the time for hearings where retained counsel are permitted to appear, it cannot object to the time consumed in hearings with appointed counsel.

9. In our recent case, Clay v. Wainwright, 470 F.2d 478 (5th Cir. 1972), we dealt with a somewhat similar question. Clay had had a probationary sentence revoked

because he had five convictions of minor offenses in Florida. On account of indigency he had no counsel in the five cases. We concluded that it was not necessary to reach the retroactivity of question then because it had been the law, in this circuit before any of Clay's convictions that the accused in such a case was constitutionally entitled to aid of counsel. Harvey v. Miss., 5 Cir. 1965, 340 F.2d 263, 271. Here, however, we find no authority for holding that such was the law in the Fourth Circuit. Therefore, we must squarely face the issue.

ion. See, e. g., Pickelsimer v. Wainwright, 375 U.S. 2, 84 S.Ct. 80, 81, 11 L.Ed.2d 41, 1963. And, we are unable to perceive any difference in principle between the necessity for counsel at a felony trial and the necessity for counsel at a criminal trial for a lesser offense. As the Court said in *Argersinger*,

> "The requirement of counsel may well be necessary for a fair trial even in a petty offense prosecution. We are by no means convinced that legal and constitutional questions involved in a case that actually leads to imprisonment even for a brief period are any less complex than when a person can be sent off for six months or more." 407 U.S. at 33, 92 S.Ct. at 2010.

The Court went on to say that the sheer volume of misdemeanor cases "may create an obsession for speedy dispositions, regardless of the fairness of the result," 407 U.S. at 34, 92 S.Ct. at 2011, and quoted from a study which concluded that "misdemeanants represented by attorneys are five times as likely to emerge from police court with all charges dismissed as are defendants who face similar charges without counsel." American Civil Liberties Union, Legal Counsel for Misdemeanants, Preliminary Report 1 (1970).

We conclude, therefore, that the lack of counsel at a trial for a petty offense or misdemeanor so affects the integrity of the fact-finding process as to require that *Argersinger* be afforded retrospective application.

On that basis it is unnecessary for us, under the reasoning expressed in Williams v. United States, supra, and reaffirmed in Adams v. Illinois, supra, to consider the remaining two prongs of the Stovall test. Notwithstanding this, however, we think, first, that reliance by law enforcement authorities on any rule contrary to that announced in *Argersinger* should not, in the wake of *Gideon*, have been very great, and second, that the effect on the administration of justice of a retroactive application of *Argersinger* will be minimal.

As to reliance, we note that the handwriting of *Argersinger* was on the wall when Gideon was decided in 1962. Although the Court in Gideon dealt with a felony trial, it did not so limit the need of the accused for legal assistance. The Court said:

> "[I]n our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him. This seems to us to be an obvious truth. . . . The right of one charged with crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours. From the very beginning, our state and national constitutions and laws have laid great emphasis on procedural and substantive safeguards designed to assure fair trials before impartial tribunals in which every defendant stands equal before the law. This noble ideal cannot be realized if the poor man charged with crime has to face his accusers without a lawyer to assist him." 372 U.S. at 344, 83 S. Ct. at 796.

Thus, the Court in *Argersinger* concluded that the rationale of Gideon "has relevance to any criminal trial, where an accused is deprived of his liberty." 407 U.S. at 32, 92 S.Ct. at 2010.

As to the impact of our decision on the administration of justice we feel that the issue is likely to arise only in cases such as this one, e.g., in the context of parole or probation revocation, or in related situations such as that described in United States v. Tucker, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1971). With regard to the great bulk of misdemeanor convictions invalidated by retroactive application of the *Argersinger* rule any issue pertaining thereto will, almost by definition, be moot.

■ Having concluded that *Argersinger* has retrospective application, we turn finally to the issue raised with respect to the use by the Florida Parole Commission of Cottle's two North Caro-

lina convictions in a subsequent parole revocation proceeding, if any. Perhaps needless to say, one's parole cannot be revoked solely on the basis of prior invalid convictions. See State ex rel. Roberts v. Cochran, 140 So.2d 597 (Fla., 1962); Clay v. Wainwright supra n. 9. Thus, the issue here turns on whether either or both of Cottle's North Carolina convictions were invalid as having been procured in violation of Cottle's right to counsel under the *Argersinger* rule.

■■ As we have previously indicated, the district court held that neither of Cottle's two convictions could be considered as evidence by the Parole Commission in a subsequent parole revocation hearing. We are of the view, however, that only the second of Cottle's two convictions must be excluded from the Commission's consideration.

It is noted that as to the first of Cottle's convictions, on April 29, 1968, Cottle received a 20 day suspended sentence, but there is nothing in the record to show that Cottle was imprisoned for this conviction.[10] If that is so, then the rule in *Argersinger* does not apply.

The Court in *Argersinger* made it clear that "no person may be *imprisoned . . . unless he was represented by counsel*." 407 U.S. at 37, 92 S.Ct. at 2012 (Emphasis added). Thus, the court concluded, "The run of misdemeanors will not be affected by today's ruling. *But in those that end up in the actual deprivation of a person's liberty, the accused will receive the benefit of 'the guiding hand of counsel' so necessary when one's liberty is in jeopardy.*" at 40, 92 S.Ct. at 2014. (Emphasis added). Inasmuch as Cottle, for all that ap-

pears, was not deprived of his liberty when he was convicted the first time of public drunkenness, the conviction is not tainted by reason of the fact that he was not afforded counsel to represent him. However, as to his second conviction, which did in fact result in imprisonment, Cottle was constitutionally entitled to counsel, and, none having been provided, that conviction is invalid and may not be considered by the Parol Commission in any future proceeding to revoke Cottle's parole.[11]

The judgment of the district court is affirmed in part, and reversed in part and remanded to the district court for proceedings in accordance with this opinion.

SIMPSON, Circuit Judge (concurring in part in the result, and dissenting in part):

Appellee Cottle was released from prison by the State of Florida on parole. He had not completed his parole when he was convicted for public drunkenness in North Carolina in April and June of 1968. In view of these North Carolina convictions, the Florida Parole Commission conducted a hearing and decided to revoke Cottle's parole. The majority concludes (1) that Florida denied Cottle his Fourteenth Amendment right to equal protection of the law because Fla. Stat. 947.23, F.S.A., permits a parolee with means to be represented by counsel at a parole revocation hearing but does not provide counsel for indigent parolees, like Cottle unable to afford to employ counsel, citing Griffin v. Illinois, 1955, 351 U.S. 12, 20, 76 S.Ct. 585, 591, 100 L.Ed. 891, 899, and Earnest v. Willingham, 10 Cir. 1969, 406 F.2d 681; and

10. At a subsequent hearing, of course, Cottle could introduce evidence to refute this assumption, which, if proved, would provide a valid basis for excluding from the Commission's consideration the fact of his first conviction.

11. It is noted that at Cottle's initial parole revocation hearing, the Commission relied on this second conviction, not as evidencing a violation of the law, but as proving a violation of Condition 4 of Cot-

tle's Certificate of Parole which states "I will not use intoxicants of any kind to excess." However, there was no evidence before the Commission other than the fact of conviction for public drunkenness to substantiate this conclusion. Since the second conviction was invalid, the Commission, at any future hearing, would have to have evidence independent of the conviction itself in order to make such a finding.

(2) that the second North Carolina conviction was unconstitutionally obtained because it violated Cottle's Argersinger v. Hamlin, 1972, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530, right to counsel, which the majority holds to be fully retroactive in its application, and, therefore, should not be considered by the Parole Commission in any proceeding to revoke Cottle's parole.

I concur in the result reached that Cottle was unconstitutionally denied counsel at his parole revocation hearing before the Florida Parole Commission, but upon different reasoning than that employed by the majority.

I respectfully dissent from the majority holding that on this record the second North Carolina conviction was unconstitutionally obtained. That question is not properly in this case as I read the record before us.

### I.

In Morrissey v. Brewer, 1972, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484, the Supreme Court found that the termination of parole would inflict a "grievous loss" on the parolee and, therefore, the process of termination must be accompanied with some form of procedural due process. *Morrissey* required that the revocation hearing provide the parolee with

> . . . an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest the violation does not warrant revocation.

408 U.S. at 488, 92 S.Ct. at 2603, 33 L. Ed.2d at 498. To achieve those ends, it held that the parolee must be accorded

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

408 U.S. at 489, 92 S.Ct. at 2604, 33 L. Ed.2d at 499. The Court, however, specifically did not reach or decide the question whether the parolee is entitled to the assistance of retained counsel or to appointed counsel if he is indigent. 408 U.S. at 489, 92 S.Ct. at 2604, 33 L. Ed.2d at 499.

I would decide the question the Supreme Court left unanswered in *Morrissey* and conclude that without the assistance of counsel the guarantees provided by *Morrissey* are of little practical benefit to the prisoner who, particularly the indigent, is often ineffectual, if not incapable, in organizing and presenting the information which should be put before the parole board. Although the parole revocation hearing lacks many of the intricacies of a criminal prosecution, the lawyer's training and skill are peculiarly tailored to effectively analyze and introduce evidentiary matter bearing on the occurrence or non-occurrence, as well as the significance, of past events, conduct the examination and cross-examination of witnesses, and reveal the mitigating circumstances and subtleties not immediately obvious to anyone but the trained lawyer. Specht v. Patterson, 1967, 386 U.S. 605, 87 S.Ct. 1209, 18 L. Ed.2d 326; United States ex rel. Bey v. Connecticut State Board of Parole, 2 Cir. 1971, 443 F.2d 1079, 1087, 1088, vacated as moot, 404 U.S. 879, 92 S.Ct. 196, 30 L.Ed.2d 159.

Due process is an adequate and more logical ground than the equal protection argument advanced by the majority, but I agree that Cottle on one ground or the other, perhaps both, was entitled to counsel to assist him at his parole revocation hearing before the Florida Parole Commission.

## II.

In Argersinger v. Hamlin, supra, the Supreme Court held that

. . . no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial.

407 U.S. at 37, 92 S.Ct. at 2012, 32 L. Ed.2d at 538. Since only the second North Carolina conviction for public drunkenness involved incarceration, it is only that conviction, as the majority recognizes, which can arguably involve *Argersinger*.

The majority opinion adopts uncritically the finding of the district judge that Cottle "was not represented at the [North Carolina] trials . . ., solely because of his indigency" and notes that neither below nor here did the state of Florida contest this finding. Supra, Note 2, page 2. The court proceeds from this basis to apply *Argersinger* retroactively and holds that Cottle was denied counsel because of indigency in the second North Carolina conviction and that this conviction was improperly used against Cottle in his subsequent parole revocation hearing.

The district court held no evidentiary hearing. The only facts before it were those developed at the parole revocation hearing. That record wholly fails to show that Cottle was unable to employ counsel during the North Carolina proceedings. To the contrary, he told the Florida Parole Board that he had been receiving a monthly disability income of $100. As to the second North Carolina offense he stated that he planned to live in Wilmington, North Carolina, and did not want to create "any problems" with the arresting policeman whom he felt had been abusing him.

"So that's the reason that I got mixed up in this little affair of saying that I was drunk or public drunk, which this officer—I don't want to have any trouble because I knew I was going to be living in Wilmington and I didn't want to get him fired, for that simple reason I didn't get me a lawyer that morning and get out of all of it. It only costed me about 50—50 or 60 dollars, it done the whole job but I didn't—I didn't want to do that."

This statement by Cottle himself indicates to me that he could afford counsel at the time of the second North Carolina proceeding. It certainly does not demonstrate indigency. His statement that "it costed" 50 or 60 dollars may refer to the going price for an attorney, or it may refer to the amount that could be expected to be imposed as a fine. He served the 20 days sentence imposed, perhaps to be free from any problems with the officer, but on the basis of his testimony *not* because he was unable to afford counsel. Cottle's reason for not retaining counsel was given by him:

". . . I didn't want to have any trouble because I knew I was going to be living in Wilmington and I didn't want to get him fired, for that simple reason I didn't get me a lawyer that morning and get out of all of it."

The district judge held no hearing. His finding that Cottle "was not represented . . . solely because of his indigency" was picked up from the brief filed before him by Cottle's court-appointed attorney. It had no basis in the parole revocation record, the only evidentiary record made in this. case to date.

Since Cottle's lack of counsel at the second North Carolina trial was not shown to be caused by or even connected with indigency, the majority's holding that *Argersinger* rights of Cottle were there violated, however sound it may be legally, is totally lacking in factual underpinning. On this record, the question should not be reached. With deference, I dissent from the majority's holding in this respect.