Roy Alton LANE, Petitioner-Appellant,

v.

ATTORNEY GENERAL OF the UNITED
STATES, Respondent-Appellee.

No. 72-1747.

United States Court of Appeals,
Fifth Circuit.

April 26, 1973.

William A. Clineburg, Atlanta, Ga.,
Court-appointed for petitioner-appellant.

John W. Stokes, Jr., U. S. Atty., P.
Bruce Kirwan, William P. Gaffney,
Asst. U. S. Attys., Atlanta, Ga., for re-
spondent-appellee.

Before RIVES, THORNBERRY and
GOLDBERG, Circuit Judges.

GOLDBERG, Circuit Judge:

Appellant, Roy Alton Lane, is current-
ly an inmate of the Atlanta Federal
Penitentiary. On February 1, 1963, he
was sentenced by the United States Dis-
trict Court for the Northern District of
Georgia to serve ten years imprisonment
for bank robbery. After serving ap-
proximately one-third of his sentence,
appellant was paroled on May 11, 1966.

On July 2, 1970, after appellant had
been on parole for more than four years,
the United States Board of Parole is-
sued a warrant charging him with vio-
lating certain conditions of his parole.
Specifically, he was charged with (1)
public drunkenness, (2) leaving his dis-
trict without obtaining permission from
his parole officer, (3) driving while un-
der the influence of alcohol, (4) using
alcoholic beverages excessively and fail-
ing to work regularly, and (5) failing to
report to his probation officer as direct-
ed. On July 6, 1970, appellant was ar-
rested pursuant to the warrant and im-
prisoned in the Fulton County, Georgia,
jail.

On July 13, 1970, appellant was inter-
viewed in the Fulton County Jail by a
United States Probation Officer. Dur-
ing the course of this interview, appel-
lant signed an "Attorney-Witness Elec-
tion Form" admitting that he had violat-
ed one or more of the conditions of his
release on parole and stating that he
wished to be given his revocation hear-
ing upon his return to a federal institu-
tion. On July 29, 1970, appellant was
transferred to the Atlanta Federal Peni-
tentiary where he was interviewed by a
caseworker on August 6, 1970. During
the course of that interview appellant
sipned a second "Attorney-Witness Elec-

tion Form," which indicated that he wished to waive the right to retain counsel. He alleges that he waived that "right" because he had no money with which to pay an attorney.

On August 10, 1970, appellant's parole revocation hearing was conducted at the Atlanta Federal Penitentiary. On September 21, 1970, the United States Board of Parole ordered that appellant's parole be revoked and that he resume serving the remainder of his sentence.

On December 14, 1971, appellant filed a petition for a writ of habeas corpus in the United States District Court for the Northern District of Georgia. Appellant alleged that the procedure followed at his parole revocation hearing violated his constitutional rights in that he was not afforded the assistance of counsel even 'though he was an indigent and could not pay for counsel himself. After receiving a response from the United States but without conducting an evidentiary hearing, the court below denied the petition. The court's order makes clear that the learned judge based his decision on an understanding that the due process clause of the Constitution does not require that counsel be afforded parolees at parole revocation hearings. The judge below further found that appellant had voluntarily waived counsel. Appellant shortly thereafter filed a motion with the district court asking it to vacate its earlier order. Appellant urged several grounds in support of his motion, but his principal emphasis was on a claim that his "waiver" of counsel was neither voluntarily nor knowingly made. The district court adhered to its denial of habeas relief and found that the entire waiver issue was immaterial if the Constitution does not require counsel in the first place.

Appellant brings this appeal from the denial of habeas relief. He urges reversal on two distinct grounds. First, he insists that the due process clause of the Constitution demands that parolees be represented by counsel at parole revocation proceedings. Secondly, appellant argues that if the government allows parolees who can afford it to furnish their own retained counsel at parole revocation proceedings, the equal protection clause of the Constitution is violated by the government's refusal to furnish counsel to those who cannot afford to pay for their own attorneys.

Although it has perhaps been heretofore supposed that resolving these issues required Sisyphean judicial labors, our task is eased by a rare but equally fortunate occurrence. We are guided to our decision by the sagacious words of an opinion in our own Circuit that is itself going to press as we write this opinion, Cottle v. Wainwright, 5 Cir. 1973, 477 F.2d 269.

## I. DUE PROCESS

Appellant persuasively insists that Morrissey v. Brewer, 1972, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484, when read with the Supreme Court cases developing the right to counsel, e. g., Powell v. Alabama, 1932, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158; Gideon v. Wainwright, 1963, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799; In re Gault, 1967, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527; Argersinger v. Hamlin, 1972, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530, requires us to hold that due process of law is violated when a person's parole is revoked without his having had the assistance of counsel. We need not and do not decide that issue. As did the Supreme Court in Morrissey v. Brewer, supra, 408 U.S. at 489, 92 S.Ct. at 2604, 33 L.Ed.2d at 499, and as did this Court in a very recent case regarding state parole revocation proceedings, Cottle v. Wainwright, 5 Cir. 1973, 477 F.2d 269, we expressly pretermit any discussion of the question of whether due process requires the appointment of counsel for indigents facing revocation of their parole.

■ We do not reach the "due process" argument because we find that a different constitutional principle, that of "equal protection of the laws," mandates the appointment of counsel for indigent parolees where, as here, the authority

revoking parole permits more affluent parolees to appear with retained counsel. Of course, the Equal Protection clause appears in the Fourteenth Amendment, which is applicable only to the states. But Bolling v. Sharpe, 1954, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884, made clear that the federal government cannot, consistent with the due process required by the Fifth Amendment, which *is* applicable to the federal government, do that which the states are forbidden to do by the Equal Protection clause. *See also* Van Blaricom v. Forscht, 5 Cir. 1973, 473 F.2d 1323 (slip op. no. 72–1374, Feb. 21, 1973).

## II. EQUAL PROTECTION

The equal protection issue was only recently before us for the first time in Cottle v. Wainwright, *supra*. There, this Court held that Florida, "once having provided for retained counsel . . . cannot constitutionally deny the same opportunity to indigents." Here, the federal government unquestionably allows the appearance of retained counsel, 28 C.F.R. § 2.41. The question now before us is whether the federal government may constitutionally deny the assistance of counsel to those unable to pay attorney's fees. In *Cottle, supra*, we agreed with the Tenth Circuit's position as expressed in Earnest v. Willingham, 1969, 10 Cir., 406 F.2d 681, 683:

> "But at issue here is the question whether an agency of the Federal government can administratively afford counsel at revocation hearings to those financially able to retain one while refusing appointed counsel to those financially unable. To pose the question is to answer it, for Griffin [Griffin v. Illinois, 1956, 351 U.S. 12, 76 S. Ct. 585, 100 L.Ed. 891] and its progeny have made it clear beyond doubt that where liberty is at stake a State may not grant to one even a non-constitutional, statutory right such as here involved and deny it to another because of poverty. And it goes without saying that a Federal agency may

not, consistently with Fifth Amendment due process, do that which a State is forbidden to do by Fourteenth Amendment due process."

The *Cottle* case controls and is dispositive of the case now before us. Judge Tuttle's well-reasoned opinion in *Cottle* amply discusses the relevant legal issues, and there is little we can add to it. We note that *Cottle's* recognition that the assistance of counsel cannot be said to be "an empty ritual" is particularly true on the facts of the instant case. The second "charge" against appellant, for example, alleged that he had travelled outside his district without permission. 28 C.F.R. § 2.28, however, specifically authorizes certain travel even without prior approval, and had appellant been afforded counsel, the regulation might have been found and utilized as a "defense" to the charge. Thus, even though appellant may have "admitted" the facts charged, a *legal* question may well have been controlling.

Lastly, we note that virtually all of the commentators agree that the result reached in *Cottle*, which we reiterate today, is not only constitutionally required but is extremely desirable from a policy standpoint. *See* Comment, The Emerging Right to Counsel at Parole Revocation Hearings, 9 Houston L.Rev. 290 (1971). *See also* ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Probation § 5.-4(a)(ii) (approved draft 1970); ABA Project on Minimum Standards Relating to Providing Defense Services § 4.2 (approved draft 1968); Cohen, Due Process, Equal Protection and State Parole Revocation Proceedings, 42 U.Colo.L. Rev. 197 (1970); Dyke, Parole Revocation Hearings in California: The Right to Counsel, 59 Calif.L.Rev. 1215 (1971); Model Penal Code § 305.15(1) (proposed official draft 1962); President's Commission on Law Enforcement and the Administration of Justice: Report: The Challenge of Crime in a Free Society 150, Task Force Report: The Courts 54, and Task Force Report: Corrections 86–88 (1967); Sklar, Law and Practice

in Probation and Parole Revocation Hearings, 55 Crim.L.C. & P.S. 175 (1964); Note, Parole Revocation in the Federal System, 56 Geo.L.J. 705, 719–726 (1968); Note, Parole: Rights and Revocation, 37 Brooklyn L.Rev. 550 (1971); Comment, Procedural Safeguards in Federal Parole Revocation Hearings, 57 N.W.U.L.Rev. 737, 758–760 (1963).

### III.

■ Before appellant may obtain relief under our holding, he must first show (1) that he was in fact an indigent, and (2) that he has not willingly, knowingly, and voluntarily waived the right to have counsel appointed to represent him at the parole revocation hearing. Because the signed "Attorney-Witness Election Forms" state on their face that appellant waived only the "right" to *retain* counsel, the forms are not dispositive. A factual inquiry into these two questions must be had, and the case must therefore be remanded to the district court for further proceedings in accordance with this opinion.

We leave to the district court in the first instance the task of fashioning an appropriate remedy should appellant show himself to be qualified for relief. It appears that the burden of that task may be considerably lightened by use of 18 U.S.C. § 3006A, which was not in effect in its current form at the time appellant's parole was revoked. Although it has been suggested that § 3006A does not authorize use of federal funds to appoint counsel at revocation proceedings, 45 Comp.Gen. 780 (1966), that holding was made before the current version was enacted. Section 3006A(a) now specifically mentions "furnishing representation for any person financially unable to obtain adequate representation . . . (3) who is subject to revocation of parole . . ." and § 3006A(g) captioned "Discretionary appointments," provides that, "Any person subject to revocation of parole . . . may be furnished representation . . . whenever the United States magistrate

or the court determines that the interests of justice so require and such person is financially unable to obtain representation." It would be a jurisprudential anomaly if the act providing compensation for attorneys appointed to represent a person "who is subject to revocation of parole" did not contemplate such appointments.

■ Modern jurisprudence cannot tolerate the denial of even a non-constitutional right to counsel solely because of indigency. Wealth as a classifier of rights is suspect in the embrace of the equal protection clause of the Constitution. The unconstitutionality of government-sanctioned inequality between indigents and non-indigents in the granting or withholding of human rights has been confronted and discussed in many contexts and with many aspects. In the right to counsel bailiwick, however, we can find no room for equivocation or ambivalence or apologetics. If representation by counsel is a matter of right, be it constitutional, statutory, or even administrative, it can neither rise nor fall by counting-house standards.

The constitutional road has been long, rugged, and sometimes tortuous in establishing that principle, and we find neither reason nor precedent to stray even a step from that revered path. To hold otherwise would travesty the hallowed concept of equal protection under the law that our Constitution demands. Granting the right to counsel affords a mighty and not a "ritualistic" protection, and the equality of that protection can be assured only if the indigent are furnished that which their more economically fortunate brothers can procure. No subtlety of constitutional law can be summoned to deny unto those who have not, while granting unto those who have, that which the Nation has vouchsafed.

The district court is directed to determine whether appellant can qualify for relief. If so, the court is further directed to investigate the available facilities, procedures, and resources and to fashion a remedy for assuring that despite the

fact that he is an indigent appellant may obtain representation of counsel at any federal parole revocation hearing.

Reversed and remanded.