**Ernest Jackson COTTLE, Petitioner,**

v.

**Louie L. WAINWRIGHT, Director, Division of Corrections, State of Florida, Respondent.**

**No. 70–986–Civ.-J.**

United States District Court,
M. D. Florida,
Jacksonville Division.

Feb. 28, 1972.

---

Morton A. Kesler, Gutman & Kesler, Jacksonville, Fla., for petitioner.

Wallace E. Allbritton, Asst. Atty. Gen., Robert L. Shevin, Atty. Gen., Tallahassee, Fla., for respondent.

## ORDER

McRAE, Chief Judge.

Petitioner Ernest Jackson Cottle was convicted of robbery in the Duval County Criminal Court of Record and, on September 14, 1956, sentenced to serve a term of twelve years in the state penitentiary. On November 28, 1961, petitioner was released on parole. For the next six years he managed to conduct himself in a fashion that the Florida Parole Commission found unobjectionable. In April of 1968, however, he was convicted of public drunkenness in violation of North Carolina law.[1] The maximum penalty for a first offense—twenty days' imprisonment—was imposed but suspended. A month and a half later,

petitioner was again convicted of public drunkenness. Pursuant to sentence imposed for this second infraction, he served twenty days in jail although he faced a possible penalty of imprisonment for six months, having been convicted for a second time within a twelve months' period.[2] Insofar as appears from the record, at neither of the North Carolina trials was petitioner represented by counsel, nor was he informed that the state would provide counsel if he could not afford to retain counsel himself.

On August 2, 1968, the Florida Parole Commission conducted a hearing that resulted in the revocation of petitioner's parole effective retroactively to July 6, 1968. Petitioner challenges the revocation of his parole on two grounds, both of which were argued unsuccessfully in the state courts. The first is that he did not have counsel at the revocation hearing solely because he was unable to bear the expense of private counsel. He contends that this circumstance amounted to a denial of the equal protection of the laws.

A narrow application of the equal protection doctrine is of no avail to petitioner here because he waived the right to an attorney at the hearing, both orally and in writing. If a man of means had made such a waiver, he would be bound by it no less than an indigent citizen. But such an approach obscures the important fact that a man unable to obtain the services of a lawyer has no real choice, while an affluent citizen does.

The doctrine of estoppel addresses itself to those situations where a meaningful choice has been exercised voluntarily. It is grounded on considerations arising out of the public interest in avoiding repetitious litigation and in conclusively resolving disputes as promptly as may fairly be done. A litigant may not have it both ways where

---

1. N.C.Gen.Stat. ch. 14, § 335.

2. "Upon conviction for any subsequent offense . . . within a 12-month period he shall be punished by a fine . . . or by commitment . . . for an indeterminate sentence of not . . . more than six months." Id., Sec. (a).

the result is expense and delay for his adversary uncompensated by any significant enhancement of the likelihood of a sounder determination the second time around.

Here these considerations militate against an estoppel. There was considerable factual dispute at the revocation hearing. Trained advocacy has long been recognized as being of great importance in the fair resolution of conflicting factual claims.[3] Petitioner's agreement to proceed without counsel at the revocation hearing was acquiescence in the one manner of proceeding available to him. Petitioner waived nothing other than the right to retain private counsel and of the loss of this right he does not complain, since it was worthless to him.

The question remains whether the equal protection clause of the fourteenth amendment requires that indigent citizens be afforded the assistance of counsel at parole revocation proceedings when such assistance is available to those who can afford to pay an attorney.

Distinctions in the law between rich and poor are generally the least likely to bear up under constitutional scrutiny, Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and no compelling state interest[4] requires an exception in this case. Cf. Harper v. Virginia State Board of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966).

In Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967), the Court held that a right to counsel existed as a matter of due process in a certain proceeding under Washington law, "whether it be labeled a revocation of probation or a deferred sentencing."[5] Mempa v. Rhay, 389 U.S. 128, 137, 88 S.Ct. 254, 258 (1967). In the Fifth Circuit, the rule is that the right to counsel in probation revocation proceedings exists only if sentencing takes place at the same time. Shaw v. Henderson, 430 F.2d 1116 (5th Cir. 1970). *Contra*, Hewett v. State of North Carolina, 415 F.2d 1316 (4th Cir. 1969). This rule limits

3. See Judge Sobeloff's concurrence in Jones v. Rivers, 338 F.2d 862 (4th Cir. 1964).

4. Respondent has taken the position that the question of counsel at state parole revocation hearings is without the scope of federal power first by virtue of the tenth amendment, which begs the question, and secondly because, it is said, the equal protection clause of the fourteenth amendment does not extend to such proceedings. Certainly the fact that they are state proceedings is insufficient in itself to defeat federal power. Cf. Katzenbach v. Morgan, 384 U.S. 641, 86 S.Ct. 1717, 16 L.Ed.2d 828 (1966). Nor does the additional fact that parole revocation is an exercise of state executive rather than judicial power or that parole is a matter of "grace" rather than a legal right in the strict sense serve to insulate these hearings from the commands of the fourteenth amendment. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). The state interest here is control over the allocation of public moneys and it is an important one. But state control is very little circumscribed by a requirement that what is given to men of means must be given alike to those without, when the state remains free, under Shaw v. Henderson, 430 F.2d 1116 (5th Cir. 1970), to grant or, in order to conserve public moneys, withhold altogether the right to counsel at parole revocation hearings. See generally Railway Express Agency v. New York, 336 U.S. 106, 111–113, 69 S.Ct. 463, 93 L.Ed. 533 (1949) (separate opinion of Mr. Justice Jackson).

5. Washington law permits a trial court to defer imposition of sentence on a criminal defendant adjudged guilty, conditioned on satisfactory compliance with the terms of his probation. If probation should be revoked, the trial court must impose the maximum sentence since there is no discretion in this regard under Washington procedures. The trial judge is required, however, "to furnish the [Washington State Board of Prison Terms and Paroles] with a recommendation as to the length of time that the person should serve." Mempa v. Rhay, supra, 389 U.S. at 135, 88 S.Ct. at 257. When the authorities seek to revoke a man's probation, a fact-finding hearing must be held. If a violation of the terms of probation is established, the trial judge pronounces sentence at the same proceeding. Mempa v. Rhay holds that a criminal defendant has a right to counsel at this proceeding, at least if he has been adjudged guilty on the basis of a plea of guilty.

Mempa v. Rhay to its facts and proceeds upon the rationale that the right to counsel extends only to "every stage of a criminal proceeding where substantial rights of a criminal accused may be affected." Shaw v. Henderson, 430 F.2d at 1118.

Although the Fifth Circuit has not decided the question of whether due process requires that counsel be available at parole revocation hearings, Shaw v. Henderson strongly suggests that there is no constitutional right to counsel at parole revocation hearings. Other courts have reached this conclusion,[6] although the question is not a settled one and there is respectable authority for the contrary proposition.[7] But the question of whether due process requires that lawyers be allowed to participate in revocation proceedings as advocates for parolees is different from the equal protection problem now presented. The State of Florida permits representation by privately retained counsel at parole revocation hearings.[8] May it then deny representation to indigent convicts, even though—assuming an extension of *Shaw* —it need not permit the participation of counsel at all?

■ The Court finds persuasive the teaching of Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956) that

"there can be no equal justice where the kind of trial a man gets depends on the amount of money he has," (at 19, 76 S.Ct. at 591)

and holds that petitioner has a right to counsel coextensive with the right to counsel Florida law affords a person with means.[9] Of course the present case is a parole revocation proceeding whereas Mempa involved probation revocation, but a man's liberty is at stake no less than at the original trial.[10]

■ Petitioner's second contention is that his parole revocation cannot lawfully be predicated on the two North Carolina convictions for public drunkenness. At the trials on the North Carolina charges he was not represented by counsel because of his indigency.[11]

Relevant to this claim is the recent decision in United States v. Tucker, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592. There Mr. Justice Stewart, speaking for the Court, declared illegal the use of convictions judicially determined to have been procured in violation of the dictates of Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), as the basis for sentencing in a later trial for a separate offense.

---

6. Firkins v. Colorado, 434 F.2d 1232 (10th Cir. 1970) (per curiam); Gonzales v. Patterson, 370 F.2d 94 (10th Cir. 1966); Williams v. Dunbar, 377 F.2d 505 (9th Cir. 1967); Rose v. Haskins, 388 F.2d 91 (6th Cir.), cert. denied, 392 U.S. 946, 88 S.Ct. 2300, 20 L.Ed.2d 1408 (6th Cir. 1968).

7. United States ex rel. Bey v. Connecticut State Board of Parole, 443 F.2d 1079 (2nd Cir. 1971); Commonwealth v. Tinson, 433 Pa. 328, 249 A.2d 549 (1969); Warren v. Michigan Parole Board, 23 Mich.App. 754, 179 N.W.2d 664 (Ct.App. 1970), appeal dismissed, 184 N.W.2d 457 (Mich.1971); People ex rel. Menechino v. Warden, 27 N.Y.2d 376, 318 N.Y.S. 2d 449, 267 N.E.2d 238 (1970).

8. Fla.Stat. § 947.23(1), F.S.A.

9. Indigent Federal parolees have the right to counsel at revocation hearings by statute. 18 U.S.C. § 3006A(a) (3) (1970). Before this enactment, the same result was held constitutionally compelled. Earnest v. Willingham, 406 F.2d 681 (10th Cir. 1969). *Contra*, Jones v. Rivers, 338 F.2d 862 (4th Cir. 1965). But cf. Hewett v. North Carolina, 415 F.2d 1316 (4th Cir. 1969).

10. When petitioner was released on parole, he had served five years and six weeks in prison. Revocation of his parole means incarceration for an additional six years and 46 weeks.

11. As to petitioner's indigency, there is no dispute. On a silent record, we are unable to assume a waiver. Carnley v. Cochran, 369 U.S. 506, 513–516, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962); Johnson v. Zerbst, 304 U.S. 458, 464–465, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

*Tucker* differs from the present case in that the prior convictions were invalid in *Tucker* without reference to collateral consequences at the subsequent trial on different criminal charges. Here the North Carolina convictions are not invalid and present no constitutional problem[12] when viewed independently of their consequences in the parole revocation proceeding. But the consequences at a parole hearing have here proven very serious ones, much more serious than the "total potential penalty," Matthews v. State, 422 F.2d 1046 (5th Cir. 1970), necessary for the right to counsel to arise in a misdemeanor prosecution in this circuit.

The Court now holds not that the North Carolina convictions are tainted but that their use in Florida parole revocation proceedings must be foregone because petitioner was not represented at the trials eventuating in the convictions, solely because of his indigency.

It is, therefore,

ORDERED:

1. Petitioner shall be forthwith released on his own recognizance.

2. Unless a revocation hearing resulting in a finding of a violation takes place within 30 days' time, petitioner shall be re-admitted to parole on the same conditions as obtained before the revocation of August 6, 1968.

3. If a parole revocation hearing is held, petitioner shall be afforded the services of an attorney.

4. If such revocation hearing is held, the North Carolina convictions shall not be introduced into evidence, although the underlying circumstances may be established by independent evidence.

12. At least no constitutional problem with the North Carolina convictions standing alone arises in the present case. The second conviction carried a possible penalty of six months. Under the Fifth Circuit rule, this conviction is invalid. Harvey v. Mississippi, 340 F.2d 263 (5th Cir.

1965). In the Fourth Circuit, at this time, a challenge to the second conviction would be delayed pending a ruling by the Supreme Court in Argersinger v. Hamlin, 236 So.2d 422 (Fla.), cert. granted 401 U.S. 908, 91 S.Ct. 887, 27 L.Ed.2d 805 (1971).