Charles William CATON, Petitioner-Appellant,

v.

P. G. SMITH, Warden, Respondent-Appellee.

No. 72–1557.

United States Court of Appeals, Seventh Circuit.

Heard Sept. 13, 1973.

Decided Oct. 3, 1973.

Michael B. Nash, Chicago, Ill., for petitioner-appellant.

Stanley B. Miller, U. S. Atty., Richard L. Darst, Asst. U. S. Atty., Indianapolis, Ind., for respondent-appellee.

Before KILEY, CUMMINGS and SPRECHER, Circuit Judges.

PER CURIAM.

Petitioner is incarcerated in the Federal Penitentiary in Terre Haute, Indiana. In April 1972, he filed a petition for writ of habeas corpus based on alleged improprieties of the United States Parole Board in revoking his parole.

In 1967, petitioner had been imprisoned under an 8-year sentence for attempted bank robbery in violation of 18 U.S.C. § 2113(a). He was released on parole in December 1969. At that time,

he subscribed to twelve conditions of parole. Conditions 8 and 11 are the pertinent ones and provide:

"8. You shall not enter into any agreement to act as an 'informer' or special agent for any law-enforcement agency."

"11. You shall not associate with persons who have a criminal record unless you have permission of your probation officer. Nor shall you associate with persons engaged in criminal activity."

On September 11, 1970, a parole violator's warrant application was issued, charging petitioner with violating his conditions of parole by (1) robbery and attempted robbery, (2) association with persons having criminal records, and (3) possessing a firearm. In the same month, a parole revocation hearing was held before Joseph E. Doneghy, an employee of the United States Parole Board. The evidence adduced at that hearing will be discussed *infra*. Petitioner's parole was revoked on September 25, 1970.

In his *pro se* petition for habeas corpus, petitioner complained that he had no attorney at his parole revocation hearing and that a very important witness in his behalf was not allowed to be heard. That witness was Hudson Olliff, then a lawyer and later a Jacksonville, Florida, judge. Petitioner wanted Olliff's testimony to show that he had advised petitioner to work as an informant with the Florida police while on parole. In part, the petition alleged as follows:

"While on parole in Jacksonville Florida, I was told by the local police that I must act as an informer. They threatened to send me back to prison if I did not help them. They even told me they had got the ok from the parole officer for me to do this. Then when I was arrested and there was a hearing, I found they had lied to me and had never got the ok from the parole officer."

"At the parole hearing, Captain Heard of the Jacksonville police admitted that he had falsely told me he had got the ok of the parole officer for me to do undercover work for the police."

In a brief memorandum opinion, the district court dismissed the petition, stating that the parole board had abundant evidence on which to base the revocation. Relying upon Morrissey v. Brewer, 443 F.2d 942 (8th Cir. 1971), reversed, 408 .U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484, and similar precedents, the district court held that due process requirements do not extend to parole proceedings. We reverse.

■ In the brief filed here by seasoned appointed counsel, petitioner first asserts that he was entitled to due process protection in the parole revocation proceeding, particularly relying upon Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484. Although the due process requirements spelled out in that case were not made retroactive (408 U.S. at 490), our examination of this 1970 parole board proceeding satisfies us that minimal due process requirements were observed. Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656, indicates that there is sometimes a right to counsel in parole revocation hearings, but we need not decide whether that case, like *Morrissey*, is prospective only, for at the commencement of this parole revocation hearing petitioner waived counsel. We also hold that petitioner was not deprived of a vital witness by the inability of Judge Olliff to appear before the parole board because his proposed testimony was merely cumulative.

Finally, we reach the question whether the parole board could properly revoke the parole on this record. The undisputed facts developed at the revocation hearing show that petitioner had been arrested in May 1970 by the Jacksonville, Florida, Police Department and charged with murder and robbery in connection with a Brink's armored car holdup. The arrest was based on an incorrect identification from an old photograph. While he was held in jail on the

Brink's charge, Captain Heard and Sergeant Johnson of the Jacksonville Police Department visited petitioner and talked to him about cooperating with them in procuring evidence against one Jimmy Floyd Wright, a suspected burglar of supermarkets and a former acquaintance of petitioner. He told Heard that he was not guilty in the Brink's case. This was also Heard's view. Heard quoted petitioner as saying "he didn't want to get railroaded and he would cooperate with us in any way if he could get out on the street." At that time, Heard specifically solicited petitioner's help in tracking down Wright. Petitioner agreed to work with the police and was released on bond. Soon afterwards, the grand jury returned a no bill with respect to the Brink's charge. It seems likely that petitioner would not have agreed to act as an informant had it not been for the pending false charge.

Petitioner was told by Heard and Johnson that parole officer Cunningham had been told of the informer scheme and had approved it. Assistant State's Attorney Richardson also agreed to the scheme and said he would explain it to Cunningham. In truth, Cunningham was not advised of the agreement to have petitioner participate in Wright's robberies until after they occurred. In reliance on these statements, petitioner himself did not seek parole officer Cunningham's clearance.

Petitioner did not read the conditions of parole before signing the Certificate of Parole. He would not have agreed to cooperate with the Jacksonville Police Department if Cunningham had told him that this would be a violation of his parole. At first Wright did not trust petitioner and would not confide in him. Petitioner testified that he reported this to the police, and that "I said the only possible way would be to participate, to get involved with them. He [Johnson] said well that's what we want you to do. We want you to get involved."

Petitioner then became involved in and advised the Police Department of the robbery of the Russell residence and the attempted robbery of the Woods' residence in Jacksonville as described in the warrant application. He was accompanied on those holdups by Wright and Hargarette Addison (or Allison) but did not carry a gun on either occasion. Both Wright and Addison were subsequently jailed for these offenses, but charges were dropped against petitioner.

As to the allegedly unauthorized possession of a firearm, the corroborated evidence at the hearing before the parole board shows that the gun found in petitioner's residence was deposited there by Sergeant Johnson to protect petitioner's family from threats from Wright's associates who were angered by petitioner's having become a stool pigeon.

■ We will not overturn the actions of the parole board unless it has acted arbitrarily or capriciously or unless as a matter of law there has been no violation of parole. *E. g.,* Clark v. Stevens, 291 F.2d 388 (6th Cir. 1961); United States ex rel. De Fillo v. Fitzpatrick, 378 F.2d 85, 87 (2d Cir. 1967). But when a parole board has acted arbitrarily and capriciously in returning a parolee to prison, then the courts must order the prisoner released. United States ex rel. De Lucia v. O'Donovan, 178 F.2d 876 (7th Cir. 1949), certiorari denied, 340 U.S. 886, 71 S.Ct. 204, 95 L.Ed. 643; see also Hyser v. Reed, 115 U.S.App.D.C. 254, 318 F.2d 225, 242 (1963), certiorari denied sub nom. Jamison v. Chappell, 375 U.S. 957, 84 S.Ct. 447, 11 L.Ed.2d 316; Cottle v. Wainwright, 338 F.Supp. 819 (M.D.Fla.1972). The evidence in this record clearly establishes such arbitrary and capricious action.

■■ Breach of parole conditions is a necessary but not sufficient ground for parole revocation, for the board is required to determine whether the violator is still a good parole risk, and he may bring extenuating factors to the board's attention. United States ex rel. Vance v. Kenton, 252 F.Supp. 344, 346 (D.Conn.1966). Here the evidence of extenuating circumstances was overwhelming. Petitioner, his wife, his mother-in-law, Captain Heard and Ser-

geant Johnson each told the same story without material inconsistency, and without contradiction by any other witness. Their testimony shows that petitioner's parole was revoked solely because of what transpired as a result of his cooperation with the Jacksonville, Florida, Police Department. He and other witnesses were falsely told that this arrangement had been cleared with his parole officer. Petitioner had not read the conditions of his parole and did not know that working as an informant was not permitted. He may have been negligent, but his good faith has not been questioned. To paraphrase United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366, "Congress could not have intended * * * [parole revocation] for a defendant who has committed all the elements of a prescribed offense, but who was induced to commit them by the government." Entirely aside from the unfairness of this revocation, this parole violation under these circumstances simply does not suggest that petitioner has become a bad risk. We do not question the general policy of forbidding parolees to work as informers, but that policy loses its vitality where police officers, knowing an individual is on parole and knowing he is concerned that he not violate his parole, repeatedly tell him that acting as an informer is not a parole violation and that everything has been cleared with his parole officer. In addition to the extenuating evidence, there was further uncontradicted evidence from the Vice President of petitioner's employer that petitioner was performing well in his job in which he had been given substantial responsibility, and that he was doing charitable work for a civic organization. This reinforces the conclusion we have reached.

At oral argument, the Government relied heavily on an allegation that petitioner was in possession of stolen meat and cigarettes when arrested. But no such violation is charged in the parole board's warrant application. There is no evidence in the record before us that these goods were stolen, and there is evidence that they were purchased.* In any event, we are satisfied from the record that petitioner's work with the Jacksonville police is the true reason his parole was revoked. We conclude that on the bizarre facts of this case, the parole board acted so arbitrarily that petitioner must again be released on parole.

Reversed with directions to grant the writ forthwith.

---

* After the Brink's robbery petitioner's wife turned over some cartons of cigarettes to the police pursuant to a search warrant. She testified that her husband purchased them through a Navy base source. She did not turn over any meats to the police. Petitioner testified he bought them through a friend's brother's fish market.