John E. WALRATH, Petitioner–Appellant,

v.

Carol P. GETTY and United States Parole Commission, Respondents–Appellees.

No. 95–1023.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 23, 1995.

Decided Dec. 6, 1995.

Daniel S. Alexander (argued), Arnold & Alexander, Chicago, IL, for Petitioner–Appellant.

Jonathan Haile (argued), Office of the United States Attorney, Civil Division, Chicago, IL, for Respondents–Appellees.

Before CUMMINGS, RIPPLE and MANION, Circuit Judges.

RIPPLE, Circuit Judge.

In this habeas corpus proceeding, John Walrath challenges the revocation of his parole. Mr. Walrath claims that the Parole Commission revoked his parole because he had protested the administration of a medical test required by a special condition of his parole. He asserts that it violates the Due Process Clause of the Fifth Amendment to predicate the revocation on this basis because the Commission had previously stated that it would not interfere with his right to protest. Mr. Walrath further alleges that revoking his parole on this ground violates his First Amendment right to free speech. For the reasons set forth in the following opinion, we affirm the decision of the district court denying the writ of habeas corpus.

# I

## BACKGROUND

On October 13, 1970, John Walrath was convicted in federal court of kidnapping a six year-old boy. Mr. Walrath was alleged to have abducted and sexually molested the boy in Chicago before taking the victim to Hart, Michigan and attempting to drown him in Lake Michigan. On February 19, 1971, Mr. Walrath was sentenced to thirty-five years in prison. He was first released on parole in 1983. His parole was revoked in 1990 after he failed to report to his parole officer an arrest and conviction for retail theft and resisting arrest.

On May 8, 1992, Mr. Walrath was paroled a second time. As a special condition of parole, he was ordered to receive ongoing mental health aftercare. Mr. Walrath's probation officer referred him to Midwest Family Resources in Oak Park, Illinois to obtain a determination of his treatment needs. After a number of interviews, Midwest Family Resources reported that he was unwilling to discuss his sexual history or sexual arousal patterns and that it would be impossible to evaluate him without a clinical polygraph and

a penile plethysmograph test.[1] Mr. Walrath refused to submit to either test. When he was approached by his probation officer about his refusal to take the tests, Mr. Walrath threatened the officer with assault. This conduct led to his arrest and the revocation of his parole for 180 days.

When Mr. Walrath was paroled for a third time, he was ordered to submit to the plethysmograph as a condition of his parole. The test was scheduled for July 7, 1993 at the Isaac Ray Center, a mental health clinic in Chicago. Six days before the test, however, Mr. Walrath filed suit in the Northern District of Illinois seeking injunctive relief from the test and damages against Parole Commission officials pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The district court denied Mr. Walrath's request for injunctive relief, *Walrath v. United States,* 830 F.Supp. 444 (N.D.Ill.1993), and dismissed his suit for monetary damages. *Walrath v. United States,* 842 F.Supp. 299 (N.D.Ill.1993). Mr. Walrath did not appeal the denial of his request for an injunction. The dismissal of the suit for money damages was affirmed by this court in *Walrath v. United States,* 35 F.3d 277 (7th Cir.1994).

Following disposition of his legal claims, Mr. Walrath took the position that he was willing to undergo the plethysmograph test. He refused, however, to sign the voluntary consent form provided by the Isaac Ray Center. Exercising its discretion to do so, the Commission deferred requiring him to take the test pending the outcome of further psychiatric evaluation. The Center's evaluation concluded that Mr. Walrath is in a special category of high risk sex offenders and that, without more information, the Center could not gauge his tendencies toward recidivism.

The United States Probation Office and the Parole Commission then notified Mr. Walrath of his right to object, within the ten-day period allowed by 18 U.S.C. § 4209, to a proposed special condition of parole that would require him to submit to the plethysmograph in accordance with the forms provided by the Isaac Ray Center. Mr. Walrath objected to the proposed special condition. Nevertheless, the Parole Commission, characterizing Mr. Walrath's refusal to sign the form as a "transparent attempt to frustrate testing and diagnosis," added the special condition on January 14, 1994.[2]

When Mr. Walrath again refused to sign the consent forms provided by the Isaac Ray Center, the Parole Commission scheduled a revocation hearing for April 18, 1994. Before the hearing was held, however, Mr. Walrath filed a petition for habeas corpus in the Northern District of Illinois. The petition alleged that requiring him to sign the form would violate his right to due process, his right to privacy, and his First Amendment right to voice a lack of consent to the test. On April 11, 1994, the district court found the test to be a reasonable condition of his parole and denied Mr. Walrath's petition. He did not appeal the court's denial of the petition.

The Parole Commission held the hearing as scheduled. According to Mr. Walrath, a dialogue took place at this hearing concerning his right to protest the plethysmograph test. He contends that Thomas Haywood, a representative of the Isaac Ray Center, stat-

---

1. A penile plethysmograph is a test designed to measure a patient's patterns of sexual arousal in response to various audible and visual stimuli. The level of arousal is measured through the use of a circumference gauge attached to the patient's penis.

2. In its entirety, the special condition provides: You shall comply with testing at the Isaac Ray Center, as previously ordered by the Parole Commission, without entering any further protest, demands, or document disclosure, or other unilateral preconditions to your participation. The Parole Commission understands your objections to this form of testing and will not construe your participation as other than compliance with your special condition of parole to avoid revocation and return to prison. However, the Parole Commission will not permit variances from the forms required by the Isaac Ray Center (including acknowledgements of voluntary submission to the plethysmograph), in order to go forward with the testing ordered by the Parole Commission. This testing is your opportunity to demonstrate to the Parole Commission that the extremely dangerous tendency toward pedophilia revealed by your original criminal behavior has abated, and that you are no longer a threat to the public safety.

ed that all the Center needed to perform the test was a signed consent form. Mr. Haywood is alleged to have added, though, that the Center would have reason for concern if Mr. Walrath protested too loudly. Mr. Walrath further contends that he circulated a letter to all those present at the hearing. This letter, which was dated April 15 and was addressed to his parole officer, indicated that Mr. Walrath was not releasing Parole officials or the Isaac Ray Center from civil liability. Mr. Walrath's final contention concerning the hearing is that a Parole Commission officer assured him that the Commission would not interfere with his right to protest the procedure; signing the consent form was all that would be needed. The parties agree that Mr. Walrath did tender a signed consent form at the April 15 hearing.

Before Mr. Walrath presented himself for the test, his attorney sent a letter to Dr. Jonathan Kelley and Thomas Haywood at the Isaac Ray Center. This letter, which was dated April 18, stated that Mr. Walrath's consent was given only to avoid imprisonment and that Mr. Walrath "has not released, nor will he release, the Isaac Ray Center from civil liability for its role in the process." R. 1, Letter from Daniel Alexander to Dr. Jonathan Kelley and Thomas Haywood of 4/18/94, Ex.C. After receiving this letter, the Center was unwilling to administer the plethysmograph to Mr. Walrath. The Parole Commission scheduled another revocation hearing for September 28, 1994.

At the September hearing, Mr. Walrath argued that his parole should not be revoked because: (1) he had a First Amendment right to protest the plethysmograph; and (2) the hearing officer had assured him that the Commission would not interfere with his right to protest. Arguing that it would help him to substantiate his claim that these assurances were given, Mr. Walrath requested a transcript of the April 18 hearing. The hearing officer denied the request for a transcript but did obtain a tape of the hearing and listened to it prior to making his decision. Citing Mr. Walrath's objections to having the test performed, the Commission revoked his parole.

Mr. Walrath then filed this petition for habeas corpus in the Northern District of Illinois. The petition first alleges that, because Mr. Walrath was given assurances at the April 18 hearing that the Commission would not interfere with his right to protest the plethysmograph, the revocation marks a change in Parole Commission policy without fair notice to him and, as such, violates his due process rights under the Fifth Amendment. The petition further alleges that the Commission's refusal to provide him with a transcript of the April 18 hearing violates his due process right to "present witnesses and documentary evidence" at the revocation hearing. *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972). Finally, the petition alleges that revocation of his parole on this basis violates his First Amendment right to protest the plethysmograph test.

The district court took the view that, even assuming that the allegations contained in Mr. Walrath's petition are true and that he was given these assurances at the April 18 hearing, his claims are without merit. The court again found the plethysmograph to be a reasonable condition of Mr. Walrath's parole; it then concluded that Mr. Walrath could be required to sign the consent form with the proper legal intention. Mr. Walrath's voluntary consent, the court explained, would necessarily include releasing potential legal claims against the Isaac Ray Center. Therefore, the court concluded, Mr. Walrath's April 18 letter was inconsistent with the consent form he had previously tendered.

Although the district court noted that Mr. Walrath had every right to send the April 18 letter to the Isaac Ray Center, it also concluded that, in light of the threats contained in the letter, it was reasonable for the Center to refuse to administer the test. Thus, Mr. Walrath's own conduct returned him to the position of not having submitted to the plethysmograph. Because Mr. Walrath had thus not complied with the special condition of his parole, the court found, the Commission's decision to revoke his parole was appropriate.

## II

## DISCUSSION

█ It is useful to begin, as the Supreme Court did in *Morrissey,* with a review of the purpose and function of parole. "The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence." *Id.* at 477, 92 S.Ct. at 2598. Specifically, the purpose of parole is "to help individuals reintegrate into society as constructive individuals as soon as they are able, without being confined for the full term of the sentence imposed." *Id.* The Court noted that parole also serves to alleviate the costs to society of keeping an individual in prison. *Id.*

In order to achieve these objectives, parolees are often subjected to specified conditions for the duration of their parole term. These conditions of parole, which often restrict a parolee's activities substantially beyond the ordinary restrictions imposed by the law on individual citizens,[3] are essential to the goal of reintegration and assist the Parole Commission in monitoring the parolee's progress toward that goal. *Id.; Faheem–El v. Klincar,* 841 F.2d 712, 720 (7th Cir.1988) (en banc). To this end, the applicable statutory provision gives the Parole Commission a certain amount of discretion in tailoring the parole conditions to particular offenders. After imposing certain mandatory parole conditions, the statute provides:

> The Commission may impose or modify other conditions of parole so long as they are reasonably related to—
>
> (1) The nature and circumstances of the offense; and
>
> (2) the history and characteristics of the parolee;

and may provide for such supervision and other limitations as are reasonable to protect the public welfare.

18 U.S.C. § 4209(a).

Without providing a parolee with incentive to comply with the terms of his parole, however, the mere placement of conditions upon his parole does not advance the goals of the parole system or adequately protect the interests of the public. The Supreme Court explained how these goals are achieved: "The enforcement leverage that supports the parole conditions derives from the authority to return the parolee to prison to serve out the balance of his sentence if he fails to abide by the rules." *Morrissey,* 408 U.S. at 478–79, 92 S.Ct. at 2599.

█ When a parolee is unable to live up to one or more of the conditions legitimately placed upon his parole, he sets into motion an administrative process designed to determine the consequences of his noncompliance. Elaborating on the nature of this process, the Supreme Court stated:

> The first step in a revocation decision thus involves a wholly retrospective factual question: whether the parolee has in fact acted in violation of one or more conditions of his parole. Only if it is determined that the parolee did violate the conditions does the second question arise: should the parolee be recommitted to prison or should other steps be taken to protect society and improve chances of rehabilitation?

*Id.* at 479–480, 92 S.Ct. at 2599; *see Felce v. Fiedler,* 974 F.2d 1484, 1499 (7th Cir.1992) (recognizing that "the only issue at a parole revocation hearing is whether the parolee has violated a condition of parole and, if so, whether that violation is serious enough to require that parole be revoked"). Under this inquiry, then, breach of a parole condition is a necessary but not sufficient ground for

---

**3.** *See United States v. Showalter,* 933 F.2d 573 (7th Cir.1991) (prisoner on supervised release prohibited from associating with other skinheads and neo-Nazis); *United States v. Williams,* 787 F.2d 1182, 1185 (7th Cir.1986) (probationer may be subjected to drug screening); *United States v. Alexander,* 743 F.2d 472 (7th Cir.1984) (probationer prohibited from owning a particular type of business); *United States v. Tonry,* 605 F.2d 144 (5th Cir.1979) (probationer prohibited from running for political office or engaging in political activity); *United States v. Kohlberg,* 472 F.2d 1189 (9th Cir.1973) (probationer required to surrender pornographic material, to terminate interest in company engaging in illegal pornography practices and not to associate with any known homosexuals); *Birzon v. King,* 469 F.2d 1241 (2d Cir.1972) (probationer prohibited from associating with persons engaged in criminal activity).

parole revocation; the Commission is still required to determine whether the violator remains a good parole risk. *See Caton v. Smith,* 486 F.2d 733, 735 (7th Cir.1973).

■■■ As we wrote in *Luther v. Molina,* 627 F.2d 71 (7th Cir.1980), "[i]t is apparent that Congress intended to give the Parole Commission great latitude in making decisions relative to [parole] revocation." *Id.* at 75 (alteration in original). Although this wide discretion does not eliminate the possibility of habeas corpus relief, it does mean that federal courts should grant such relief only in limited circumstances. *Hanahan v. Luther,* 693 F.2d 629, 632 (7th Cir.1982), *cert. denied,* 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1013 (1983); *Molina,* 627 F.2d at 75–76. "Thus, when a district court reviews a decision of the Parole Commission on a habeas corpus petition, '[t]he inquiry is not whether the [Commission] is supported by the preponderance of the evidence, or even by substantial evidence; the inquiry is only whether there is a rational basis in the record for the [Commission's] conclusions embodied in its statement of reasons.'" *Hanahan,* 693 F.2d at 632 (quoting *Zannino v. Arnold,* 531 F.2d 687, 692 (3d Cir.1976)).

We think it important to note that Mr. Walrath has litigated previously the constitutionality of requiring him to submit to a plethysmograph. Neither this question nor the appropriateness of imposing such a condition on Mr. Walrath is presently before us. It is against this background that we turn to his present claims.

■■■ The district court was clearly correct in concluding that Mr. Walrath had, quite simply, failed to comply with a condition of his parole. The special condition of parole is explicit in what it requires of Mr. Walrath: voluntary submission to plethysmograph testing at the Isaac Ray Center. Mr. Walrath's attempts to have the condition declared invalid or to prevent its enforcement proved unsuccessful. Unsatisfied with the outcome of his legal challenges, however, Mr. Walrath continued to challenge the Parole Commission's authority to require the test.

The district court was on solid ground in determining that the April 18 letter sent to the Isaac Ray Center by Mr. Walrath's attorney, complete with its thinly veiled threat of civil litigation, is clearly inconsistent with the voluntary consent envisioned by the special condition of parole. Therefore, we also agree with the district court's conclusion that, given the content of the letter, it was reasonable for the Isaac Ray Center to refuse to administer the test. The April 18 letter prevented the plethysmograph from being administered and effectively returned Mr. Walrath to the position of not submitting to the test. The district court, therefore, correctly decided that the Parole Commission was justified in revoking his parole on this ground. Accordingly, Mr. Walrath's claim that the revocation violated the First Amendment is without merit.

In light of this conclusion, Mr. Walrath's due process claims are also unavailing. Our determination that Mr. Walrath violated a condition of his parole assumes, as did the district court, Mr. Walrath's version of events—including the statement allegedly made to him at the April 18 hearing. Taking the allegation of the petition as true, it cannot be said that anything that allegedly transpired at that hearing altered the requirement that Mr. Walrath submit to the plethysmograph test.[4]

### Conclusion

Accordingly, the judgment of the district court is affirmed.

AFFIRMED.

---

4. Similarly, his allegation that the Commission's failure to provide him with a transcript of the April 18 hearing deprived him of due process is rendered ineffectual by this conclusion.