Robert S. ORTLOFF, Petitioner–Appellant,

v.

Jerry T. O'BRIEN, Respondent–Appellee.

No. 00–3396.

United States Court of Appeals, Seventh Circuit.

Submitted Feb. 5, 2001 *.

Decided Feb. 6, 2001.

\* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Before Hon. EASTERBROOK, Hon. MANION, Hon. DIANE P. WOOD, Circuit Judges.

### ORDER

Despite federal inmate Robert Ortloff's eligibility for parole, the United States Parole Commission concluded after a hearing that he was a much more serious risk than the Commission's guidelines indicated and continued his parole hearing for fifteen years. Ortloff, who believes that the Commission is under political pressure to deny him parole, petitioned the district court for a writ of habeas corpus, 28 U.S.C. § 2241. The district court denied relief. Ortloff appeals, arguing that Commission should have set his release date and that its failure to do so violated the Ex Post Facto Clause. He also claims that the Commission was biased against him. We affirm.

In 1986 Ortloff mailed a package containing a bomb to Specialist Thad Gulczynski at the United States Army Base at Fort Hood, Texas. Gulczynski was the husband of Anna Carpenter, a former employee of Ortloff's at his Tempe, Arizona flower shop, and a former romantic interest of Ortloff's. The bomb exploded in Gulczynski's lap as he opened the package in his barracks, injuring him badly. Ortloff was indicted in the Western District of Texas on one count each of assault with intent to commit murder, 18 U.S.C. § 113(a), using a bomb in relation to a crime of violence, 18 U.S.C. § 924(c), and knowingly depositing for delivery in the United States Mail a package containing an explosive device, 18 U.S.C. § 1716(a), (i). While in custody during his trial Ortloff solicited his cellmate to kill Gulczynski, Carpenter, and Carpenter's brother, and provided the cellmate with maps and a detailed plan to make it appear as if Carpenter's brother sent Gulczynski the bomb. The cellmate immediately informed his jailers of the plot, however, and Ortloff was charged by superceding indictment with obstruction of justice, 18 U.S.C. § 1503. Ortloff was convicted on all four counts and sentenced on October 3, 1986 to a total of 50 years in prison. Three years later he pleaded guilty in the District of Arizona to possession of an unregistered firearm discovered during the bombing in-

vestigation, and received a consecutive 40–month sentence. Because his crimes predated November 1, 1987, the date that the Sentencing Reform Act of 1984 took effect and eliminated parole in the federal system, Ortloff remains eligible for parole. *Valona v. United States Parole Comm'n*, 235 F.3d 1046, 1047 (7th Cir.2000).

Ortloff applied for a parole hearing in March 1999. The Commission prepared an Initial Prehearing Assessment (IPA) of his case and assigned him a Severity Category based on the offenses he committed, and a Salient Factor Score (SFS) to help determine his potential risk as a parole violator. Based on these calculations the Parole Commission's guidelines generally recommend a minimum and maximum number of months that an inmate must serve before being paroled. *See* 28 C.F.R. § 2.20. Ortloff's IPA placed him in a Severity Category of eight—the upper limit—because he committed attempted murder, *see* 28 C.F.R. § 2.20 chs. 1(102) & 2(A)(201), and assigned him an SFS of eight, indicating that he was a low violation risk.

Ortloff appeared before a Hearing Examiner on April 12, 1999. The Hearing Examiner noted that Ortloff's behavior in prison had generally been good and commended him for successfully completing a drug treatment program. The Hearing Examiner believed, however, that Ortloff posed a more serious risk than the computational numbers suggested and did not recommend to the Commission that he be released. The Hearing Examiner noted that Ortloff committed Category Eight offense. The parole guidelines do not provide a customary maximum number of months to be served before a Category Eight offender may be paroled, but rather consider the expiration of the sentence to be the maximum limit. *See* 28 C.F.R. § 2.20 n. 1. Additionally, the Hearing Ex-

aminer believed that Ortloff should be held fully accountable for his crimes based on the manner in which he had attempted to murder Gulczynski and his later solicitation of murder while in custody. The Hearing Examiner recommended that the Commission continue Ortloff's hearing for fifteen years, until April 2014, with an interim hearing in two years to determine whether any new and significant information might warrant a different decision. The Parole Commission adopted the Hearing Examiner's recommendations and notified Ortloff of its decision in a Notice of Action on April 29, 2000. Ortloff appealed to the Commission's National Appeals Board (NAB), raising several procedural issues that he has since abandoned, and arguing that he should have received more lenient treatment, the Commission was biased against him, and that the charges against him were fabricated.

Ortloff's bias and wrongful conviction claims stem from incidents surrounding the unsolved 1984 murder of Kathleen Smith, Ortloff's former business partner and the daughter of a prominent Tempe, Arizona family with alleged ties to U.S. Senator John McCain. According to his IPA and the lengthy appendices that Ortloff tendered to the district court, the Tempe police have long considered Ortloff the prime suspect in the murder. Ortloff believes that the Smith family helped frame him in the bombing in retaliation for his escaping prosecution. Shortly after his convictions, Senator McCain allegedly requested information from the Parole Commission on behalf of the Smiths regarding Ortloff's presumptive release date, and Ortloff thinks that the Senator somehow influenced the Commission's decision. Despite his attempts to bring his theory of the case to the NAB's attention, the NAB affirmed on August 24, 1999, and advised him that his complaints regarding his con-

viction and sentence should be addressed to the sentencing court.

■ Ortloff filed this habeas corpus petition in September 1999 claiming that the Commission relied on fabricated evidence; retroactively applied the parole guidelines in violation of the Ex Post Facto Clause; coerced him into waiving his rights to 60 days notice of his hearing and 30 days disclosure of his BOP file; refused him access to his minifile, and ignored his appeal. The district court reviewed his petition and dismissed his evidentiary and ex post facto claims after concluding that it had no authority to alter the information in his BOP file, and that the parole guidelines do not raise ex post facto concerns. The district court then directed the government to respond and address whether Ortloff was denied reasonable access to his files, and whether the NAB refused to rule on his appeal.[1] The government responded, and the district court denied the writ. The court found that Ortloff's allegations of bias were purely speculative, he had not presented any evidence suggesting that his waivers were involuntary, and that his right to full disclosure of his institutional file was not violated.

■ On appeal, Ortloff has abandoned his claims of procedural irregularity. He first challenges the district court's conclusion that the parole guidelines are not "laws" raising ex post facto concerns. The district court interpreted his claim to be that the parole guidelines appearing in 28 C.F.R. § 2.20 are less favorable than those in place when Ortloff committed his crimes and were applied retroactively to his detriment. The district court correctly dismissed this claim because it is well-settled that the parole guidelines are merely guides rather than laws and do not raise ex post facto concerns. *Prater v. United States Parole Comm'n*, 802 F.2d 948, 951–54 (7th Cir.1986) (en banc); *Inglese v. United States Parole Comm'n*, 768 F.2d 932, 934–39 (7th Cir.1985).

Ortloff contends, however, that the district court misunderstood his argument. He now claims that the Sentencing Reform Act of 1984, Pub.L. 98–473, Title II, § 325(b)(3), 98 Stat.2032 (Oct. 12, 1984), which took effect after he committed his crimes but applied to him retroactively, *United States v. Stewart*, 865 F.2d 115 (7th Cir.1988), required the Parole Commission to set his release date within his parole guideline range within five years of its effective date. A 1987 amendment to the Act enacted 36 days after the 1984 Act took effect, Pub.L. 110–182 § 2(b)(2), 101 Stat. 1266 (Dec. 7, 1987), allowed the Commission to set release dates exceeding the parole guideline range. Since the 1987 amendment is likewise retroactive, Ortloff asserts that it disadvantages him and must be an ex post facto violation. Ortloff, however, ignores one key fact: he committed his crimes in January 1986. Before November 1, 1987, the date the 1984 Act took effect, parole determinations were made pursuant to 18 U.S.C. § 4206, which allows the Commission to depart from its guidelines for good cause. 18 U.S.C. § 4206(a), (c); *Norwood v. Brennan*, 891 F.2d 179, 181–82 (7th Cir.1989). The 1987 amendment merely allows the Commission to continue to making parole determinations pursuant to § 4206. *See Coleman v.*

---

1. Ortloff apparently did not receive the NAB's decision prior to filing this petition. The NAB is required to state its decision within 60 days, 28 C.F.R. § 2.26(c), although if it does not a writ of habeas corpus is not the appropriate remedy, *Judd v. Baer*, 911 F.2d 571,

572 (11th Cir.1990). The government attached a copy of the NAB's decision to its response, the district court later dismissed the claim and Ortloff has not mentioned it in his brief on appeal.

*Honsted,* 908 F.2d 906, 908 (11th Cir.1990); *Lewis v. Martin,* 880 F.2d 288, 290 (10th Cir.1989). The law today currently mirrors the law on the books when Ortloff committed his crimes. *Norwood,* 891 F.2d at 182; *D'Agostino v. Keohane,* 877 F.2d 1167, 1173 (3d Cir.1989); *Tripati v. United States Parole Comm'n,* 872 F.2d 328, 330 (9th Cir.1989); *Lightsey v. Kastner,* 846 F.2d 329, 333 (5th Cir.1988).

Moreover, the Commission is not yet obligated to set Ortloff's release date. Although the 1987 amendment to the Sentencing Reform Act required that release dates be set for all inmates subject to parole before October 31, 1992, Congress has since extended this wind-up provision until October 31, 2002. *See* 18 U.S.C. § 3551 note (Effective and Applicability Provisions); *Walden v. United States Parole Comm'n,* 114 F.3d 1136, 1138–39 (11th Cir.1997).

 Next, Ortloff argues that the Parole Commission wrongfully continued his hearing for fifteen years. He contends that the Commission relied on inaccurate and misleading evidence, ignored evidence of his innocence, and was motivated by bias. The Commission has wide discretion to grant or deny parole, and federal courts will grant habeas corpus relief only where no rational basis exists in the record for the Commission's conclusion. *Slader v. Pitzer,* 107 F.3d 1243, 1246 (7th Cir.1997); *Walrath v. Getty,* 71 F.3d 679, 684(7th Cir.1995). The Commission must consider the circumstances and nature of the offense in determining whether to grant parole, 18 U.S.C. § 4206; 28 C.F.R. § 2.18, and here the Commission relied upon the evidence adduced at Ortloff's trials and summarized in his Presentence Investigation Report. Ortloff attempted to murder Gulczynski with a sophisticated bomb— although he disputes whether the bomb was "sophisticated"—and later attempted to solicit three murders while in federal custody. The Commission rationally believed that these facts suggest that he is more of a threat than his SFS indicated. Ortloff claims that this is not a rational decision because his obstruction of justice conviction was secured on the testimony of his Texas cellmate, whom he believes was an unreliable jailhouse snitch. Whether the evidence against Ortloff was weak or unreliable is irrelevant for purposes of this proceeding: two juries convicted him of the crimes, these convictions were affirmed, *United States v. Ortloff,* 818 F.2d 863 (5th Cir.1987), and his collateral attack on his conviction was rejected, *United States v. Ortloff.* No. 93–8820 (5th Cir. Dec. 16, 1994). The Commission's deference to the juries' verdicts was not improper. *See Slader,* 107 F.3d at 1250; 28 C.F.R. § 2.19(c). Since Ortloff's maximum customary release date could be the end of his sentence, the Parole Commission did not abuse its discretion.

The district court called Ortloff's bias claim "bombastic." Despite the hundreds of documents that Ortloff has placed in the record that he believes demonstrate Senator McCain's improper influence over his parole hearing, in the end he can tell us only that Senator McCain once requested information about his parole status. Ortloff argues that the district court should have allowed him discovery to determine the full extent of Senator McCain's alleged improper influence, but he waived this claim by waiting until his reply to the government's response to his petition to raise it. *See Green v. Whiteco Indus., Inc.,* 17 F.3d 199, 201 n. 4 (7th Cir.1994). Ortloff insists that the record as a whole will demonstrate that he was wrongfully convicted. Nowhere does he point to any specific evidence that proves his case, and in any event we have no authority to revisit his conviction and sentence. Ortloff's

remedy is a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 in the sentencing court, *Longbehn v. United States,* 169 F.3d 1082 (7th Cir. 1999); *Slader,* 107 F.3d at 1250, although he has no right to file one until he obtains permission to file a successive motion from the Fifth Circuit, 28 U.S.C. § 2255 ¶ 8(1).

AFFIRMED.