NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 15, 2007[*]
Decided September 6, 2007

**Before**

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 06-3760

LESLIE LOVE,
    *Petitioner-Appellant,*

    *v.*

W. A. SHERROD,[**]
    *Respondent-Appellee.*

Appeal from the United States
District Court for the Southern
District of Illinois

No. 03-CV-308 DRH

David R. Herndon,
*Judge.*

**O R D E R**

The Parole Commission revoked Leslie Love's parole because he assaulted a police officer and possessed a firearm. Love filed a petition for habeas corpus

---

[*]After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

[**]W. A. Sherrod, the current warden at the Federal Corrections Institution in Greenville, Illinois has been substituted for Darlene Veltri as respondent. *See* Fed. R. App. P. 43(c).

pursuant to 28 U.S.C. § 2241, which the district court denied. On appeal Love argues principally that the Commission violated his due process rights by refusing to subpoena witnesses for the revocation hearing, delaying the hearing, and denying him a second preliminary interview. We affirm.

Love has been convicted twice of bank robbery and once of escaping from federal custody. After his first bank robbery conviction, he was sentenced to 20 years' imprisonment, and after his conviction for his escape and second bank robbery, he was sentenced to 25 years' imprisonment to run concurrently with his first sentence. He has been paroled four times, and his parole has been revoked each time. His sentence has been adjusted after each parole revocation, thus, he is currently serving an aggregate sentence of more than 36 years' imprisonment in a federal facility in Illinois.

Most recently, Love was paroled in February 2001. Over the weeks that followed, at a time when he was supposed to be living at a half-way house, the police grew to suspect him of promoting prostitution by operating an escort service. Police officers attempted to arrest Love, but he fled in his car and, while trying to escape, accelerated and collided with two other cars, one of which was an unmarked police car containing a detective. Love managed to speed away, evading arrest. The Parole Commission issued a warrant charging Love with (1) promoting prostitution, (2) leaving the scene of an accident, and (3) police evasion. Love was later arrested.

The police then obtained a search warrant for the three-bedroom apartment that Love leased with his wife and out of which the police believed he was running his escort service. In one of the three bedrooms, the only one containing men's clothing, they found a shotgun, shotgun shells, and applications bearing Love's signature for employment with the escort service. In other areas of the apartment, they found pill bottles labeled with Love's name and bills addressed to him. They also arrested a woman in the apartment and charged her with prostitution.

Approximately two weeks after his arrest, a probation officer interviewed Love about the charges in his arrest warrant. Love denied all charges and requested a revocation hearing in the presence of an "adverse witness"— the woman arrested for prostitution—and other "voluntary witnesses," including his mother and his wife. In May 2001 the Parole Commission advised Love in writing that it had found probable cause to believe that he violated his parole by leaving the scene of an accident and evading the police, and that it would hold a revocation hearing. The Commission also stated that, at the hearing, it would consider two additional charges: assault on a police officer and possession of a firearm. These new charges were based on a supplemental warrant application, but Love was not given a second preliminary interview to discuss them.

In June Love wrote to the Commission to request the presence of four additional witnesses at his revocation hearing—his former probation officer, a police officer involved in the investigation, a co-defendant on an earlier drug charge, and the director of the half-way house—though he did not specify the anticipated content of their testimony. The Commission responded that it would not subpoena his requested witnesses. It explained that his former probation officer's testimony would be irrelevant because she did not supervise Love during his most recent parole, the police officer's testimony would be redundant because two other officers had been subpoenaed to testify to the same events, and his former co-defendant and the half-way house director's testimony was irrelevant because they were not involved in Love's charged parole violation. Further, the Commission commented that Love had not provided information about how these witnesses were adverse to him and had not explained the testimony he expected each to supply.

Love eventually had a revocation hearing at which the Commission heard testimony from two police officers involved in the investigation and Love's probation officer. Although Love denied all the charges and again requested that witnesses be subpoenaed, the Commission found that Love violated his parole by assaulting a police officer and possessing a firearm, and revoked his parole. The Commission also found that the assault involved using a car to run down a police officer in an attempt to evade arrest, that Love violated his parole before he was released from his half-way house, and that this was Love's fourth parole violation. It concluded that these aggravating factors warranted delaying his presumptive parole date until after he completed a 120-month prison term—20 months beyond the Parole Commission Guidelines recommendation of 78-100 months.

In June 2003 Love petitioned the district court for a writ of habeas corpus, *see* 28 U.S.C. § 2241, challenging his parole revocation. In September 2006 the district court adopted a magistrate judge's report and recommendations and denied the petition. Love timely appealed.

We review de novo the district court's decision to deny Love's petition for habeas corpus. *See Barrow v. Uchtman*, 398 F.3d 597, 602 (7th Cir. 2005 ), *cert. denied*, 126 S. Ct. 153 (2005). The Commission has broad discretion to make parole determinations, and we will grant habeas corpus relief only when there is no rational basis in the record for the Commission's conclusions. *See Slader v. Pitzer*, 107 F.3d 1243, 1246 (7th Cir. 1997); *Walrath v. Getty*, 71 F.3d 679, 684 (7th Cir. 1995).

On appeal Love first argues that the Commission's refusal to subpoena witnesses on his behalf violated his right to due process. He claims that, because these witnesses were not available for questioning, he was denied his constitutional right to confront and cross-examine adverse witnesses.

Although parolees have the right to a revocation hearing at which they can present witnesses and cross examine adverse witnesses, *see Morrissey v. Brewer*, 408 U.S. 471, 489 (1972), the Commission's regulations do not require it to subpoena witnesses if the parolee cannot show that their testimony "is necessary to the proper disposition of his case," *see* 28 C.F.R. § 2.51(a)(2)*; Hanahan v. Luther*, 693 F.2d 629, 636 (7th Cir. 1982). Love does not challenge the constitutionality of the Commission's regulation. Nor has he offered anything to show that his proposed witnesses' testimony would have affected the determination whether he assaulted a police officer or possessed a firearm; thus the Commission acted within its discretion when it refused to subpoena them. In any event, Love was not deprived of his right to cross-examine adverse witnesses because most of Love's proposed witnesses were not adverse to him, and the one who could have offered testimony adverse to Love—the investigating police officer—could have offered only testimony that was redundant. And Love had every opportunity to question the adverse witnesses who did attend the hearing, including his probation officer and two police officers.

Love next argues that his due-process rights were violated by the lengthy delay in holding his revocation hearing—Love was arrested in March 2001 and the Commission found probable cause in April, but the revocation hearing was not held until September. He contends that this delay was unreasonable and therefore, we should presume that he was prejudiced by the lengthy passage of time.

Once probable cause has been established, a parole revocation hearing "shall be held within a reasonable time." Fed. R. Crim. P. 32.1(a)(2). And although the Commission is required to hold a revocation hearing within 60 days of a finding of probable cause, *see* 18 U.S.C. 4214(a)(1)(B), the Commission does not automatically violate due process if it fails to adhere to this rule. *See Hanahan*, 693 F.2d at 634; *Camacho v. White*, 918 F.2d 74, 79 (9th Cir. 1990); *Donn v. Baer*, 828 F.2d 487, 490 (8th Cir. 1987). Specifically, to determine whether a delay violates a defendant's due-process right, we balance the length of the delay, the reason for the delay, the defendant's assertion of his right to a prompt hearing, and the prejudice suffered by the defendant. *See United States v. Rasmussen*, 881 F.2d 395, 398 (7th Cir. 1989); *Hanahan*, 693 F.2d at 635; *United States v. Poellnitz*, 372 F.3d 562, 570 (3d Cir. 2004); *cf. Bryant v. Grinner*, 563 F.2d 871, 871-72 (7th Cir. 1977) (abrogating rule that a delay in excess of three months creates an irrebuttable presumption of prejudice and requires defendant's release).

The delay here did not violate Love's constitutional rights. Though the lengthy delay is troublesome, it is not enough to establish a due-process violation. *Cf. Hanahan*, 693 F.2d at 634-35 (four-month delay raised "due process question," but was not unconstitutional where parolee did not request prompt hearing and was

not prejudiced).  Love has not shown that he asserted his right to a prompt hearing.  Nor has he indicated how this delay prejudiced him.  Although he argues that the passage of time might have blurred the witnesses' memories, Love does not point to any evidence suggesting that any witness's memory was impaired or that any testimony was tainted as a result of the delay.

Love then argues that the Commission violated its own regulation in denying him a second preliminary interview to determine whether there was probable cause for the additional charges that he assaulted a police officer and possessed a firearm.  The Commission's regulations require it to hold a preliminary interview to determine whether there is probable cause to believe that the parolee violated his parole and whether a hearing should be held, *see* 28 C.F.R. § 2.48(b).  Love contends that this regulation requires the Commission to conduct a second interview if it decides to add new charges after the first interview.

Here, a second preliminary interview would not have altered the result because the Commission had already determined that there was probable cause to believe that Love violated his parole, and had decided to hold a hearing.  Moreover, Love cannot show that the Commission violated his constitutional rights, which he would have to do to qualify for habeas relief.  *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991); *Turner v. Henman*, 829 F.2d 612, 614 (7th Cir. 1987).  Love has no due process right to a preliminary interview on every charge that the Commission intended to address at the revocation hearing.  All that due process requires is a "written notice of the claimed violations of parole," *Morrissey*, 408 U.S. at 489, and Love received such notice in the Commission's May 2001 letter and supplemental warrant.

Love next argues that the Commission incorrectly applied the re-parole guidelines.  He contends that the Commission first factored his assault of the police officer into its calculation of his guidelines range and then considered the assault again to support the decision to enhance his penalty above this range.  Thus he charges the Commission with improper double counting.

The guidelines are intended to assist the Commission in determining the appropriate penalty to impose upon revocation of parole, but the Commission may take into account aggravating circumstances and adjust the penalty accordingly.  *See Augustine v. Brewer*, 821 F.2d 365, 371 (7th Cir. 1987).  Here, the Commission did not double count the assault.  To support its penalty enhancement, the Commission considered Love's recidivism and his not having even been released from his half-way house when he violated his parole.  And, the Commission may weigh as an aggravating factor the nature of an offense used to determine the guidelines range, which the Commission did here when it found relevant that the assault occurred while Love was attempting to avoid arrest.  *See Thomas v.*

*Brennan*, 961 F.2d 612, 620 (7th Cir. 1992). The Commission acted within its discretion when it imposed the a penalty above the guidelines range.

Finally Love argues that there was no basis for the Commission to find that the firearm belonged to him. But this argument is meritless. There was a rational basis for the Commission's finding, *see Slader*, 107 F.3d at 1246, given the evidence that Love signed the lease for the apartment where the firearm was found, his name was on documents and bills in the apartment, and men's clothing was found in the same bedroom as the firearm.

AFFIRMED.